O’NIELL, J.
The plaintiff sued on a policy of insurance for $1,400 on an automobile which was destroyed by fire on the 10th of June, 1912. He also sued for 12 per cent, per annum interest from the 7th of August, 1912, and for 10 per cent, attorney’s fee on the total sum.
Judgment was rendered in the district court for the full amount of the policy, with 12 per cent, statutory interest per annum, and $150 attorney’s fee. The judgment was signed in open court on the 30th of May, 1913. Five days later, after the delays for a new trial had expired and the defendant had obtained an order of appeal returnable to the Court of Appeals, Second Circuit, holding session in Shreveport, the district judge signed an order correcting his judgment by inserting “12 per cent, statutory damages’’ instead of “12 per cent, statutory interest per aimum.” This correction was made on the petition of the plaintiff and without notice to the defendant.
The Court of Appeals reduced the amount of the judgment to $750, and allowed 12 per cent, on this sum as statutory damages and $75 for the attorney’s fee. The plaintiff’s demand in excess of the sum awarded him was dismissed as in case of nonsuit.
The case is before us on writs of certiorari *117 and review issued at the instance of the defendant.
Before answering the petition in the district court, the defendant excepted thereto, pleading that it was vague and indefinite, and did not disclose a cause of action, and that the demand was premature. These exceptions were contained in one document.
[1] The plaintiff contends that the plea of prematurity was waived or abandoned by being filed with the exception of no cause of action. Article 333, O. P., however, only requires that a dilatory exception must be filed in limine litis, and that it shall not be allowed if filed after a judgment by default has been entered or if contained in an answer. There had been no entry of a default, and the defendant had not answered or put at issue any of the allegations of the petition when the plea of prematurity was filed. The exception of no cause of action may be filed at any time before judgment has been rendered. It is not inconsistent with the plea of prematurity. On the contrary, it may be, although the argument is not made, that the defendant meant by these exceptions 'that the plaintiff had not alleged that he had complied with the terms and conditions of the policy of insurance, by submitting to an appraisement and adjustment of his loss, and that therefore he had not yet a cause of action; the demand being premature. Our conclusion is that the plea of prematurity was not waived or renounced or abandoned by the filing with it of the exception of no cause of action, and that it was properly considered.
[2] The exception of no cause of action refers particularly to the plaintiff’s demand for interest at 12 per cent, per annum from the expiration of the 60 days succeeding the submission of the proof of loss. Section 3 of Act No. 168 of 1908 awards, under certain circumstances, 12 per cent, damages— not interest. The district judge allowed the plaintiff his demand of 12 per cent, per annum interest. After the delays for a new trial had expired and the defendant had obtained an order of appeal from the judgment, the district court had no authority to amend it. O. P. art. 556. The Court of Appeals should have considered only the judgment appealed from, as it was originally rendered, written, and signed.
[3] Having received notice of the loss under the policy in question, the defendant prepared to avail itself of its option “ to replace the property lost or damaged with other of like kind and quality within a reasonable time on giving notice, within 30 days after the receipt of the proof (herein required), of its intention so to do.”
On the 18th of July, 1912, the defendant or the adjuster wrote to the plaintiff:
“We are in receipt of letter from the agent of the Maxwell Automobile Factory offering a secondhand Maxwell car in first-class condition, similar to No. 4079 Model E in every particular (which is the car destroyed), delivered, for the sum of $750, with the company’s guarantee. As Model E is a 1910 machine the company is in position to deliver a car of that description at reduced prices.
“As this represents the value of the car destroyed and which value is the maximum of the company’s liability, we inclose proof of loss for $750 for execution and return.
“If you desire that the company shall deliver you a car as above described we will be glad to have them communicate with you direct.
“We will add that the agent making this offer is the party who originally sold the car to Mr. Webb, of Monroe, La., and he is thoroughly familiar with' it.
“Awaiting the return of the proof of loss, we beg to remain.”
On the 22d of July, 1912, the plaintiff’s attorney wrote to the adjuster and the local agents of the defendant company who had issued, the policy:
“Under policy No. 1468 in favor of Ed. Hart, of Gibbsland, La., for $1,400 on automobile, I herewith demand blank proofs of loss of you, that we may make the necessary pz'oof of loss. Kindly let me have this blank proof by return mail.”
On the 23d of July, 1912, the defendant’s adjuster wrote to the plaintiff’s attorney:
*119 “We are in receipt of your favor of 22d instant, and in accordance therewith we inclose proof of loss blank asked for by you, under policy No. 1648 of the Springfield Eire & Marine Insurance Company, issued to Ed. Hart, Gibbs-land, La., through Arcadia, La., agency, a fire having been reported to have occurred on the 10th of June last, destroying the property insured -under this policy. In sending you this proof of loss blank, it must be distinctly understood that it is without waiver of any of the company’s rights under their policy, which are expressly reserved.”
The plaintiff filled out and signed the form for proof of loss for the full amount of the policy on the 31st of July, 1912, and mailed it to the defendant company at Springfield, Mass., on the 7th of August, 1912. It appears that the plaintiff’s letter and proof of loss were forwarded by the defendant to the adjuster, who wrote to the attorney of the plaintiff on August 26, 1912, .as follows:
“Your favor of the 7th inst., addressed to the Springfield Eire & Marine Insurance Co., Springfield, Mass., inclosing document purporting to be proof of loss under policy 1648, issued to Ed. Iiart, Gibbsland, La., through Arcadia, La., agency, has been referred to us. The document is one which we sent to the assured and which is returned to us in mutilated form. If the document sent by us to the assured was unsatisfactory, it should have been returned to us, as he was without authority to make any alteration in. it.
“In compliance with your favor of 22d July last, we sent you a proof of loss blank, and this proof of loss blank should have been used in the event that the one sent by us to your client was unsatisfactory. However, as the amount claimed 'by your client is not in accord with our appreciation of the loss as contained in our respects addressed to your client under date of the 18th of July last, we respectfully request an appraisement in accordance with lines 86 to 95, inclusive, of the policy contract.
“Mr. J. A. Brennan, of New Orleans, connected with the Eairehild Automobile Co., and who is ‘competent and disinterested,’ will act as the company’s appraiser. Please let us know the name of a party equally ‘competent and disinterested’ who will act for your client, and we will prepare the appraisement agreement to be executed. Expressly reserving all of the company’s rights, we remain.”
'The so-called mutilation mentioned in the foregoing letter referred to the fact that the plaintiff had erased the figures “$750,” and had written “$1,400, fourteen hundred dollars,” in the form sent by the adjuster in his letter of the 18th of July, 1912.
Not having a reply to the letter addressed to the plaintiff’s attorney of date the 26th of August, the adjuster again wrote to the attorney of the plaintiff on the 30th of September, 1912, as follows:
“We beg to refer you to our respects of the 26th of August last, to which we are without reply, from which we infer that an appraisement of the differences existing between the Springfield Eire & Marine Insurance Company and your client is acceptable, and we therefore inclose an appraisement agreement, with the request that you insert the name of a ‘competent and disinterested’ appraiser to represent your client. Upon receipt of the agreement properly executed, we will give the matter necessary attention.”
To this, the plaintiff’s attorney replied on the 3d of October, 1912, as follows:
“Under the policy there is nothing to appraise. . The property was wholly destroyed. You failed and refused to adjust the loss until proof of loss had been demanded and properly made. You waived the right, if there was any, to appraise and' have it appraised. Proof was made and mailed to the company as required by law on. August 7th. On the 7th day of this month, time for settlement will have expired, and we shall file suit on the policy under 'our right.”
In answer to the suit, and reserving the benefit of its exceptions, the defendant denied any liability to the plaintiff; and, in the alternative, averred that, if there was a liability, it could not exceed the value of the automobile at the time of the fire, taking into consideration the date of its manufacture, its model, condition, etc., alleging the test to be the amount for which a car in like condition could be bought. The defendant alleged that it had sought to have an appraisal made of the loss in accord with the terms of the policy, but was not permitted by the plaintiff to do so; consequently it was unable to make a tender of the amount that might be due under the policy. The defendant denied that it had been legally notified of the alleged loss; denied having sent an adjuster to adjust the loss; denied that the plaintiff had *121 made proper proof of loss; and alleged that' it had been at all times ready and willing to carry out the provisions of the policy, but that the plaintiff would not permit it.
The first paragraph of the policy contract provides:
“The company shall not be liable beyond the actual cash value of the property at the time any loss or damage occurs, and the loss or damage shall be ascertained or estimated according to such actual cash value, with proper deduction for depreciation, however caused, and shall in no event exceed what it would then cost the insured to repair or replace the same with material of like kind and quality; said ascertainment or estimate shall be made by the insured and this company, or, if they differ, then by appraisers, as hereinafter provided; and, the amount of loss or damage having been thus determined, the sum for which this company is liable pursuant to this policy shall be payable 60 days after due notice, ascertainment, estimate, and satisfactory proof of the loss have been received by this company in accordance with the terms of this policy. It shall be optional, however, with this company to take all, or any part, of the articles at such ascertained or appraised value, and also to repair, rebuild, or replace the property lost or damaged with other of like kind and quality within a reasonable time on giving notice, within 30 days after the receipt of the proof herein required, of its intention so to do; but there can be no abandonment to this company of the property described.”
The provision in the foregoing paragraph that, in the event the insured and the company differ in their estimates of the loss, the ascertainment or estimate shall be made by appraisers, “as hereinafter provided,” refers to the two paragraphs in lines SO to 95, inclusive, as follows:
“In the event of disagreement as to the amount of loss, the same shall, as above provided, be ascertained by two competent and disinterested appraisers, the insured and this company each selecting one, and the two so chosen shall first select a competent and disinterested umpire. The appraisers together shall then estimate and appraise, stating separately sound value and damage, and, failing to agree, shall submit their differences to the umpire; and the award in writing of any two shall determine the amount of such loss. The parties thereto shall pay the appraiser respectively selected by them, and shall bear equally the-expenses of the appraisal and umpire.
“This company shall not be held to have waived any provision or condition of this- policy or any forfeiture thereof by any requirement, act, or proceeding on its .part relating to the appraisal or to any examination herein provided for; and the loss shall not become payable until 60 days after the notice, ascertainment, estimate, and satisfactory proof of the loss herein required have been received by this company, including an award by appraisers when appraisal has been required.”
The defendant’s plea of prematurity — -and perhaps the exception of no cause of action — - has reference to the paragraph in lines 106 and 107 of the contract, viz.:
“No suit or action on this policy, for the recovery of any claim, shall be sustainable in any court of law or equity until after full compliance by the insured with all the foregoing requirements, nor unless commenced within 12 months next after the fire.”
[4, 6] The Court of Appeals held that the expression in the defendant’s letter of July 18,1912, that $750 “represents the value of the car destroyed” was an admission of liability to that extent; and that it was, to that extent, a waiver of the company’s right to an appraisement in accordance with the above-quoted lines 86 to 95, inclusive, of the contract.
We agree with the Court of Appeals that the defendant’s declaration that $750 “represents the value of the car destroyed” was an admission of liability to that extent. But, as the plaintiff did not accept that estimate or statement of the loss, we do not agree with the Court of Appeals that the defendant’s admission of liability was a waiver of the right to an appraisement. Under the very terms of the policy, it was the disagreement as to the amount of the loss that gave the company the right to an appraisement by two competent and disinterested appraisers. The plaintiff’s contention that the total destruction of the automobile rendered an appraisement of the loss unnecessary and impossible is not tenable. There is no statute in this state that renders an insurance company liable for the full amount of the policy in event of a 'total destruction of movable property. The *123 contract provides that the appraisers must state separately the sound value and the damage ; that the liability of the insurer is limited to the actual cash value of the property at the time of loss, allowing proper deduction for depreciation however caused; and that it shall not exceed what it would cost to replace the property lost with other of like kind and quality. Hence the insurer is not liable for any sentimental or peculiar value of the property to the insured.
The plaintiff’s suit for the amount of the liability admitted by the defendant was not premature. The' defendant’s failure to tender this sum to the plaintiff rendered the former liable for the costs incurred in the district court, but not liable to the penalty of having to pay statutory damages and attorney’s fees. If the plaintiff had expressed a willingness to accept the $750 and submit to an appraisement, his acceptance would not have waived his right to sue for any additional sum that might have been ascertained to be due him. If, in this event, the company had refused or failed to pay the amount of liability admitted, the defendant would have become liable to the penalty of having to pay the statutory damages of 12 per cent, on the total amount of the loss determined by the court and a reasonable attorney’s fee. But, to protect itself from the statutory penalty, the company was not compelled to tender the amount of liability admitted by it, so long as the insured refused to submit to an appraisement of the actual loss.
[5] The Act No. 168 of 1908 makes it the duty of the insurer, on receipt of a notice of loss, to furnish the insured with blank) forms for the proof of loss, wherein the insured is required to give the company certain detailed information mentioned in the statute. A failure or neglect on the part of the company to give the insured the blank forms for proof of loss shall be deemed a waiver of the requirement to furnish the proof of loss, and in a suit on the policy the. insurer shall not be heard to complain of the failure of the insured to furnish the proof of loss, notwithstanding such requirement or condition in the contract. If the proof of loss furnished by the insured is satisfactory to the insurer, it is the duty of the company to pay to the insured the amount of the loss shown to be due within 60 days after the receipt of the proof, or it will be liable to a penalty of leaving to pay the insured, in addition to the amount of the loss, 12 per cent, thereon as damages and a reasonable attorney’s fee. If the proof of loss submitted by the insured is not satisfactory to the company, it then becomes the duty of the company — and a fortiori it is then the right of the company — to proceed with an appraisement and adjustment of the loss and liability under the terms of the policy. And, in this event, if the company fails or neglects to pay the insured the amount of the loss thus ascertained to be due under the policy within 60 days from the date on which the company received the proof of loss submitted by the insured, the company shall be liable for the penalty above stated. The statute finally provides that, whenever the insurance company shall pay to the insured, within 60 days from the date on which it received the proofs of loss offered by the insured, the amount which its adjuster or agent has determined or admitted to be due, the insured shall only recover the difference between the amount paid and the amount judicially ascertained to be actually due under the policy, together with 12 per cent, damages on this difference and reasonable attorney’s fees. Hence it is plain that the company is not liable to the statutory penalty for withholding the amount of its liability admitted by its agent or adjuster, as long as the insured refuses to submit to an appraisement; for the insurer has a right to an adjustment of its liability before being penalized for not paying *125 it. The provision that the company may pay the amount of liability admitted by its agent or adjuster, and thereby protect itself pro tanto from the penalty, is advantageous to the insured, in that he may accept the payment and reserve his right to recover any additional amount that may be judicially ascertained to be due him; but it does not absolve him of his obligation in the contract to submit to an appraisement.
For the reasons assigned, the judgment of the Court of Appeals is amended by rejecting the allowance of the statutory damages and attorney’s fee, and it is otherwise affirmed ; the plaintiff, respondent herein, to pay the cost of the proceedings in this court.