No. 2892

Second Circuit

(Second Division)

MARTIN v. THE HOME INS. CO.

(April 9, 1931.   Opinion and Decree.)

Lee & Lindsey, of Minden, attorneys for plaintiff, appellee.

Hawthorn, Stafford & Pitts, of Alexandria, attorneys for defendant, appellant.

TALIAFERRO, J.   Plaintiff alleges that on January 2, 1925, a Ford coupe, owned by him and insured against loss from fire by defendant's·policy, was totally destroyed by fire originating in said car while it was in use for pleasure by his wife on the public highway in Webster parish; that, while the amount of said insurance, fixed in said policy, was only $473, the actual value of the car at date of fire was $630.67.

In addition to the amount of the insur-. ance policy, plaintiff demands judgment for 25 per cent thereof as statutory penalty, $150 attorney's fees and $94 for towing the burned car to the nearest garage and storage thereon.

It is. alleged that said policy at time of fire was in full force and effect; that plaintiff had complied with all the terms and conditions thereof; that he gave to defendant notice of said loss by telegram and letter the day following the fire and furnished proof of loss on January 10, 1925, as required by the policy; that immediately after the fire he had the wreck towed to a garage in Gibsland at a cost of $10, and stored same in compliance with the terms of the policy; that some time prior to January 15th defendant had said

wreck inspected, and by letter of that date, attached to and made part of the petition, admitted that it would cost $377.90 to repair the burned car, but only offered petitioner $302.32 in full settlement of the loss; that on January 17th he advised defendant that he would not accept this offer, but that, if defendant would have said coupe repaired, he would accept the repairs in lieu of all claims under the policy on account of the fire; that defendant made no reply to this proposition, save that on January 23, 1925, submitted to petitioner additional blanks for proof of loss; that said blanks were promptly filled out and returned to defendant company on January 25th, but were deemed unsatisfactory; that he wrote the insurance company on the subject of this loss on February 4th and 17th, but received no reply to these letters until February 19th, just before expiration of the sixty-day period for settlement of the loss, defendant demanded an appraisal of said loss; that said demand for appraisal was made in bad faith and for the purpose of delaying settlement of the claim.

Plaintiff admits that he agreed to accept the offer of $302.32, after having declined to do so, provided the amount would only apply as a credit against his loss, but not in full settlement, which defendant refused to consider.

It is further admitted that the Commercial Credit Company, Inc., of New Orleans, La., held a mortgage against said Ford coupe at time of its destruction by fire on which there was a balance due of $43.70.

Defendant, under full reservations of its rights, filed an exception of prematurity to the suit of plaintiff, based upon the following stipulations contained in the insurance policy sued on, viz.:

"In case the assured and this company shall fail to agree as to the amount of loss or damage, each shall, on the written demand of either, select a competent and disinterested appraiser. The appraiser shall first select a competent and disinterested umpire; and failing for fifteen (15) days to agree upon such umpire, on request of the assured or this company, such umpire shall be selected by a judge of a Court of record in the County and State in which the property insured was located at time of loss. The appraisers shall then appraise the loss and damage stating separately sound value and loss or damage to each item; and failing to agree, shall submit their differences only to the umpire. An award in writing, so itemized, of any two when filed with this company shall determine the amount of sound value and loss or damage. Each appraiser shall be paid by the party selecting him and the expenses of appraisal and umpire shall be paid by the parties equally.

"This company shall not be held to have waived any provision or condition of this policy or any forfeiture thereof by any requirement, act, or proceeding on its part relating to the appraisal, or to any examination herein provided for; and the loss shall in no event become payable until sixty (60) days after the notice, ascertainment, estimate and verified proof of loss herein required, have been received by this company, and if appraisal is demanded, then not until sixty days after an award has been made by the appraisers."

It is further averred in this exception that the parties hereto could not agree upon the amount of loss or damage, and that exceptor, in keeping with the provisions of the policy, demanded an appraisal, which plaintiff refused.

The exception was referred to the merits by the court, but not passed on, by the judge independently of his decision on the merits.

After the exception of prematurity had been disposed of, defendant, reserving its rights under the exception, answered.

Issuance of the policy sued on and it being in full force and effect at the time of fire is admitted. It is also admitted that plaintiff gave notice of the fire as alleged in his petition, but it is denied that sufficient proof of the loss was given as required by the terms of the policy; and it was admitted that the burned car was towed to the garage in Gibsland and thereafter inspected by defendant; that, after such inspection, in order to compromise with plaintiff, and for that purpose only, defendant offered to pay $302.32 in full of its liability as insurer, which was declined by defendant, and immediately the offer was withdrawn and plaintiff notified thereof, as well as of insurer's intention to stand upon the provisions of the policy; that, failing to reach an agreement with plaintiff as to the amount of loss sustained by the burning of the coupe, he was furnished blank proof of loss, but, in filling out said papers, plaintiff claimed the full amount of the policy, without giving credit for depreciation, or for the salvage value of the burned car, and for these reasons the proof of loss papers were unsatisfactory and plaintiff so notified.

Defendant further avers that in good faith it did timely demand of plaintiff that the amount of loss he had sustained on account of the insured car being burned be submitted to appraisers, as provided in the contract of insurance, and that this offer was ignored; that thereafter plaintiff expressed a willingness to accept the $302.-32, which defendant had offered as a full settlement between them, but only as a credit on his claim for the loss of the car, which was declined.

In conclusion, defendant, for further answer, avers that the court is without right or authority or jurisdiction to determine and fix the amount of the claim of plaintiff against it until plaintiff has complied with all of the terms and conditions of the contract policy, including that of referring the matter of loss to arbitrators selected in the manner prescribed by the policy itself.

Defendant prays that this suit be dismissed, but, in the event, for any cause, plaintiff is given judgment, that credit be allowed for $87.40, being the amount of mortgage debt against said car, which was paid by it.

The record is clear as to what the plaintiff and the adjusters, acting for defendant, did looking to a settlement of the loss arising from the burning of plaintiff's Ford coupe.

After the car was burned, plaintiff caused it to be removed to the garage of Reed Motor Company, in Gibsland, and on January 3d he notified the insurance company of the fire. Within ten days, Mr. Boyle, representing the adjusters, inspected the car and undertook to adjust the loss with plaintiff, who insisted upon payment of the full amount of the policy. On January 12th, at the request of plaintiff, the Reed Motor Company examined the burned car closely to ascertain the parts and accessories necessary to restore it to good condition and submitted to defendant a detailed list thereof with cost of same, totaling $377.90. Upon receipt of this report or estimate, McBride, Bourne & Kennedy, adjusters, on January 15th, wrote to plaintiff as follows:

"We have received a detailed estimate of damage from the Reed Motor Company amounting to $377.90, which will put your car in first class order according to their estimate of damage.

"We enclose herewith Proof of Loss for the amount of $302.32, being the amount due you less depreciation of 20%, or $75.58.

"Please sign this before a Notary Public

and return at your earliest convenience and you may have this work done where you desire."

This letter with inclosure reached plaintiff promptly, for on January 17th he answered by declining to accept $302.32 in full settlement of his loss and returned the proof of loss sent to him.

We quote the following from this reply, viz.:

"Will advise here that I cannot agree to accept your offer of $302.32 as covering liability carried in the policy issued by the Home Insurance Company for the reason that this policy plainly states that I am entitled to $473.00 and no less, if my car is either stolen or destroyed by fire.

"You have stated that you are advised by the Reed Motor Company, of Gibsland, La., that the car can be placed in first class condition for $377.90. If this is true, they may go ahead and make the repairs, provided they put on an entirely new body and necessary parts, you to pay the entire cost of repairs whether above or below their estimate."

After the adjusters received this letter of plaintiff's on January 23d, they wrote him in part as follows, viz.:

"We received your letter of January 17th and we do not agree with the figures as set out. Solely for the purpose of complying with the statutes of Louisiana, we are forwarding you proof of loss, which we ask that you kindly fill out in detail, giving all the information you have regarding the fire to your car."

This letter was written by defendant under full reservation of all its rights and defenses concerning the matter discussed.

Plaintiff filled out said proof of loss and mailed same to the adjusters who, on January 31st, wrote him as follows, to-wit:

"Being in receipt of documents purporting to be proofs of loss under the above captioned form of policy, you are notified that the same are incomplete and unsatisfactory to the above named Insurance Company for the reason that the details supporting the amount claimed by you form no part of the purported proof of loss, this being one of the reasons, amongst others, why the same are incomplete, imperfect and not satisfactory."

On February 19th the adjusters wrote plaintiff as follows:

"In reply to your letter of recent date, please be advised in conformity with the policy contract, the company demands an appraisal of your loss, we being unable to agree as to the amount claimed as a result of the fire which occurred on January 2nd at 5 P. M.

"We ask that you furnish us with the name of your appraiser in order that we may complete proper forms and send to you for signature. We will at that time name our appraiser and proceed in accordance with the policy."

It does not appear that plaintiff answered this letter, and on March 11th defendant's adjusters wrote plaintiff:

"We do not see the necessity for this long chain of correspondence in view of our having demanded appraisal under registered letter, in conformity with the policy contract, under date of February 19th.

"We call upon you to name your appraiser in order that we may proceed in conformity with the policy contract."

Plaintiff did not take much interest in the proposal to have his loss determined by submission to appraisers, according to the correspondence in the record, but, after a visit by his attorney to the office of the adjusters in New Orleans, on May 23d, when this matter was evidently discussed, the adjusters wrote plaintiff:

"Your attorney was in the office this morning in reference to your claim, and requested the writer to name our appraiser. We hereby name Mr. Fred Oster of New Orleans as appraiser for Home Insurance Company, who is an entirely disinterested party, and we call upon you to name your appraiser, who must be an expert mechanic and a disinterested party. As soon as we are in receipt of this information we will

prepare appraisal blanks and forward them to you for signature, at which time the appraisers will get together and arrange to enter into appraisement, or appoint an umpire."

Nothing further seems to have been done in this connection until October 5th, when the adjusters wrote Mr. J. Rush Wimberly, then attorney for plaintiff:

"Your letter of the 1st inst., addressed to the Home Insurance Company and to ourselves, has been received, and replying thereto beg to again call your attention to the fact that under dates of February 19th, 1925, March 11th, 1925, and again on May 23rd, 1925, we wrote Mr. H. Childs Martin demanding an appraisal under the printed conditions of the policy contract. This demand has had no attention from Mr. Martin and we now again beg to demand that this loss and damage be appraised as required by the printed conditions of the policy. If Mr. Martin will advise us the name of his appraiser we will immediately prepare the necessary documents and send them to him."

It is now well settled that covenants in contracts of insurance providing that the amount of loss or damage thereunder be submitted to arbitration are valid and binding on both the assured and the insurer. Hart v. Insurance Co., 136 La. 114, 66 So. 558; Hamilton v. Home Ins. Co., 137 U. S. 370, 11 S. Ct. 133, 34 L. Ed. 708; Hamilton y. Liverpool, L. & G. Ins. Co., 136 U. S. 242, 10 S. Ct. 945, 34 L. Ed. 419.

Defendant contends that its proposition to pay plaintiff $302.32 as outlined in the letter of January 15th was simply an offer of compromise and not an admission of liability to any extent. However, there is not one word in this letter indicating that such was intended. When informed that the repairs necessary to restore the burned car to good condition would cost $377.90, defendant made a reduction of 20 per cent for depreciation and referred to the balance (80 per cent) as "being the amount due you." To this extent we do not think plaintiff's action premature. Beyond this amount the action is premature.

The facts in the Hart case, referred to above, are very much like those of this case, and that case is authority for the conclusions we have reached on the issues presented herein. In that case it was held:

"When, on being notified of a loss, the adjuster of an insurance company writes the insured that the company can replace the property destroyed for a stated sum, and adds, 'As this represents the value of the car destroyed and which value is the maximum of the company's liability, we enclose proof of loss for $750, for execution and return,' the company will be held to the admission of liability for the amount stated."

After defendant admitted liability to the extent above discussed, and plaintiff declined to accept the proffered amount, contending for the full amount of the policy without deductions of any kind, defendant as the record discloses, in good faith, insisted upon the question of loss being submitted to arbitration as provided in the policy. Defendant was unquestionably within its rights in adopting this course, and did not waive the right by admission of liability to any extent.

"An admission of liability by an agent or adjuster of the insurance company for an amount less than is demanded in the proof of loss submitted by the insured is not a waiver of the company's right to an appraisement under the terms of the policy." Hart case.

The failure of the insured and the insurer to reach an agreement as to the amount of loss gives rise to the right to invoke the stipulations of the policy regarding the submission of the question to arbitration.

It would be inequitable to penalize an insurance company for not paying admitted liability when the insured persisted in claiming the full amount of the policy and declined to submit differences to an appraisement. The Hart case, on this point, holds as follows:

"An insurance company is not liable for statutory penalties under Act No. 168 of 1908 for withholding the amount of liability admitted by the agent or adjuster of the company, as long as the insured demands the payment of a larger sum and refuses to submit to an appraisement under the terms of the policy."

The Act No. 168 of 1908 has been superseded by Act No. 59 of 1921 (Ex. Sess.).

The district court gave plaintiff judgment for $522.52, with legal interest from judicial demand, less $87.40. We shall have to amend that decree. The evidence shows that plaintiff incurred expense of $10 for having the burned car towed to a garage. Under the policy this expense is chargeable to defendant, which, added to defendant's admitted liability, makes $312.-32 due plaintiff. Defendant paid $87.40 of the mortgage debt against the car of plaintiff before this suit was filed and is entitled to credit therefor in this decree, which leaves a balance due plaintiff of $224.92, with interest.

For the reasons herein assigned, the judgment appealed from is amended by reducing the amount awarded plaintiff to $224.92, with legal interest thereon from judicial demand until paid, and, as thus amended, said judgment is affirmed.

It is further ordered, adjudged, and decreed that all rights, actions, and defenses to which the parties to this suit are entitled, arising from or growing out of the loss from fire of plaintiff's automobile, and the insurance policy thereon, which are not specifically foreclosed by this decree, are hereby reserved to them.