For the reasons assigned, the judgment appealed from is affirmed; the plaintiff to pay the costs of both courts.

## NEW v. UNION AUTOMOBILE INS. CO. *
### No. 4016.

Court of Appeal of Louisiana. Second Circuit, Second Division.

Nov. 18, 1931.

· Thatcher, Browne, Porteous & Myers, of Shreveport, and Clifford E. Hays, of Minden, for appellant.

Kennon & Kitchens, of Minden, for appellee.

STEPHENS, J.

The plaintiff sues to recover $400 on an insurance policy, and for penalties and attorney's fees as provided for by Act 59 of 1921 (Ex. Sess.) for failure of the defendant to pay the amount due under the policy within sixty days after the receipt, by the insurer, of proofs of loss from the insured. The policy covers the risk of damage and destruction by fire on plaintiff's automobile. The automobile was completely destroyed by fire on April 8, 1930. The plaintiff immediately notified the defendant of the loss, and on April 12th furnished the defendant with formal proofs of loss. The defendant offered the plaintiff $250, which he refused to accept; and on May 12th the defendant excepted to the proofs of loss and demanded an appraisal under the terms of the policy. In compliance

¹Rehearing granted January 14, 1932.

with this demand, the plaintiff on May 15th named as his appraiser Mr. C. B. Roberts. On June 20th, which was more than sixty days after the loss had occurred, the plaintiff and defendant entered into an agreement for an appraisement, in which Mr. R. W. McFarland was named as the appraiser for the defendant. After the completion of the agreement, the question of appointing an umpire, as provided by the terms of the policy, was discussed by the appraisers, but no one was agreed upon who would accept the service. Mr. McFarland then left Minden, La., where the loss occurred, for his home in Shreveport, La.; but agreed to return the next day, which was Saturday the 21st of June, to complete the appraisement. He failed to return to Minden for that purpose until the 26th of June, at which time he learned that this suit had been instituted on the 24th of that month. There was no communication between the plaintiff and the defendant, or their appraisers, between June 20th, the date the agreement for the appraisal was signed, and June 24th, the date this suit was filed.

Pleas of prematurity and estoppel, and an exception of no cause of action, were filed by the defendant, and tried and overruled by the district court. The defendant then answered and the case was tried on the merits, resulting in a judgment in favor of plaintiff in the sum of $300, representing the value of the automobile, and the further sums of $75 as penalties, and $100 as attorney's fees. The defendant appealed from the judgment, and the plaintiff answered the appeal, praying that the amount of the judgment of the district court be increased to $400; that the penalties be accordingly increased to $100; and that the judgment be otherwise affirmed.

The plea of prematurity is founded upon the proposition that the policy of insurance sued on contains the usual arbitration clause providing for the appointment of appraisers to fix and determine the amount of the loss; and that any action brought on the policy prior to such determination is premature.

The plea of estoppel is urged on the ground that a few days prior to the filing of the suit the plaintiff signed an agreement of submission of the matter of values to appraisers.

We are of the opinion that both pleas were properly overruled to the extent of the amount of admitted liability, which is $250, and the penalties and attorney's fees incidental thereto; but as to the amount in dispute in excess thereof, the pleas should have been sustained.

The policy contains the following stipulations:

"(10) In ascertaining the amount of any loss or damage under Section 1 hereof, the Company shall not be liable beyond the actual cash value of the property at the time any loss or damage occurs, and the loss or damage shall be ascertained or estimated according to such actual cash value, with proper deduction for depreciation, however caused, and shall in no event exceed what it would then cost to repair or replace the same with material of like kind and quality; such ascertainment or estimate shall be made by the Assured and this Company, or, if they differ, then by Appraisers as herein provided."

The policy further provides for an appraisal by arbitration, as follows:

"(12) In event the Insured and the Company shall fail to agree as to the amount of loss or damage under Section 1 hereof, each shall, on the written demand of either, select a competent and disinterested appraiser, and the two so chosen shall then select a competent and disinterested umpire. Thereafter the appraisers together shall estimate and appraise the loss or damage, stating separately sound value and damage, and failing to agree, shall submit their differences only to the umpire; and the award in writing of any two shall determine the amount of such loss or damage; the parties thereto shall pay the appraiser respectively selected by them, and shall bear equally the expense of the appraisal and umpire."

The policy is then concluded with the following paragraph:

"Failure of the Assured to perform any of the acts or agreements embodied in and made a part of this policy or his breach of any of the covenants therein contained shall render this policy null and void."

That covenants in insurance policies providing that the amount of loss or damage arising thereunder be submitted to arbitration are valid and binding on both the assured and the insurer is settled beyond controversy. Hart v. Insurance Co., 136 La. 114, 66 So. 558; Hamilton v. Home Insurance Co., 137 U. S. 370, 11 S. Ct. 133, 34 L. Ed. 708; Hamilton v. Liverpool & L. & G. Insurance Co., 136 U. S. 242, 10 S. Ct. 945, 34 L. Ed. 419; Martin v. Home Insurance Company, 16 La. App. 216, 133 So. 773.

The defendant made timely demand for an appraisal but pursued that demand tardily; as on June 20th, when the agreement for submission to appraisers was finally consummated, more than sixty days had elapsed from the time proofs of loss were delivered to it.

Section 3 of Act 59 of 1921 (Ex. Sess.), in part, provides:

"* * * It shall be the duty of the fire or theft insurance company that has issued the policy or policies upon receipts of proofs of loss from the assured, to pay the amount due under its policy or policies, within sixty days thereafter, * * * and should the company fail to pay, within said time the amount due the insured under the policy after demand made therefore, such company shall

be liable to pay the holder or holders of such policy in addition to the amount of the loss, twenty five per cent. damages on the total amount of the loss as may be determined by a court of competent jurisdiction together with all reasonable attorney's fees for the prosecution and collection of such loss."

In the case of Mayer v. Security Union Insurance Company, 8 La. App. 308, it is stated:

"The law places the burden of the initiative in the matter of adjustment on the insurer and intends that it shall act promptly."

■ The defendant did not act promptly. in submitting the agreement to plaintiff, and we are convinced that if plaintiff had refused to sign the submission on June 20th he would have been legally justified in such refusal and may have immediately pursued his remedy in the courts. But as he did sign the agreement, and it is presumed that he acted with full knowledge of his legal rights, he was estopped from instituting this suit with reference to the amount in dispute and subject to arbitration under the agreement, until a reasonable time had elapsed in which the agreement might have been executed.

■ A reasonable period of time was not allowed for that purpose. Only three days passed between the date of signing the agreement and filing the suit, excluding the day of signing and the day of filing, and one of these days was Sunday.

■■ On the trial of the pleas under discussion, Mr. Leo Barnett, insurance adjuster for the defendant, testified as follows:

"As I recall it he had a policy for $400 and we offered to pay him $250, which we figured was the value of his car."

This testimony was elicited by the counsel for the defendant.

Clearly, this is an admission of liability to the extent of $250. The value of the car was the thing in dispute and to be determined in order to ascertain the liability of the insurer. If the adjuster of the insurer "figured" the value of the car at $250 and made the offer to plaintiff on that basis, as he frankly admits that he did, there not only was no suggestion of compromise by the act, but on the contrary the idea of compromise is negatived.

In Hart v. Springfield Fire & Marine Insurance Co., 136 La. 122, 66 So. 558, 560, the Supreme Court, speaking through Mr. Justice O'Niell, said:

"We agree with the Court of Appeals that the defendant's declaration that $750 'represents the value of the car destroyed' was an admission of liability to that extent."

In the case of Martin v. Home Insurance Co., 16 La. App. 216, 133 So. 773, p. 776, this court used the following language:

"When informed that the repairs neces-

sary to restore the burned car to good condition would cost $377.90, defendant made a reduction of 20 per cent. for depreciation and referred to the balance (80 per cent.) as 'being the amount due you.'"

The chief distinction between the cited cases and the case under consideration is that in the former, liability was admitted prior to the beginning of the suits, and in the latter only after trial of the plea of prematurity had commenced.

The question of whether the tender of the $250 to plaintiff was for the purpose of compromise or was intended as an admission of liability is of no importance when the representative of the defendant, who had been duly authorized to adjust the loss and determine its liability, stated under oath that the amount tendered was the value of the automobile destroyed; it is an admission that the defendant owed the plaintiff the amount tendered, as the value of the automobile was the measure of the defendant's liability.

■ As the defendant admits owing the plaintiff $250 at the time the agreement of submission was entered into, and as the agreement of submission was signed after the penalties and attorney's fees had accrued, under the provisions of Act 59 of 1921 (Ex. Sess.), we are of the opinion that the penalties and attorney's fees may be legally exacted on the admitted amount. In order to have protected itself the defendant should have paid the admitted amount within the sixty-day period fixed by the statute, subject to arbitration of the amount in excess thereof demanded by the plaintiff.

■ With reference to the amount held to be in dispute, the plaintiff, we think, is bound by his obligation to arbitrate, and that his deliberately entering into such obligation, and then immediately repudiating it by suit, operates as a waiver of the penalties and attorney's fees imposed by Act 59 of 1921 (Ex. Sess.).

It is therefore ordered, adjudged, and decreed that there be judgment overruling the pleas of prematurity and estoppel in so far as they are leveled at the admitted liability of $250, and the penalties and attorney's fees sued for based thereon; and sustaining said pleas as to the remainder of plaintiff's demand. It is further ordered, adjudged, and decreed that there be judgment in favor of plaintiff and against the defendant in the sum of $250 as admitted liability; $62.50 as penalties and $100 as attorney's fees. It is further ordered that plaintiff's demands in excess of those now allowed be dismissed as of nonsuit. It is further ordered, adjudged, and decreed that the judgment appealed from, in so far as it is in conflict therewith, be annulled, avoided, and reversed.