438 So.2d 599 (1983)
Roy McCLAIN, Jr., Plaintiff-Appellee,
v.
GENERAL AGENTS INSURANCE COMPANY OF AMERICA, INC., Defendant-Appellant.
GENERAL AGENTS INSURANCE COMPANY OF AMERICA, INC., Plaintiff-Appellant,
v.
Roy McCLAIN, Jr., and Mrs. Henrietta Dunn McClain, Defendants-Appellees.
Nos. 15442-CA, 15443-CA.
Court of Appeal of Louisiana, Second Circuit.
June 6, 1983.
On Rehearing September 20, 1983.
Writ Denied November 28, 1983.
*600 Hayes, Harkey, Smith & Cascio by Thomas M. Hayes, III, Monroe, for Gen. Agents Ins. Co. of America, Inc.
Ellis & Ellis by Carey J. Ellis, Jr., Rayville, for Roy McClain, Jr., and Mrs. Henrietta Dunn McClain.
Before HALL, SEXTON and NORRIS, JJ.
HALL, Judge.
A building owned and operated by Roy McClain, Jr. as the Cozy Spot lounge and cafe was completely destroyed by fire on November 1, 1980. McClain sued General Agents Insurance Company of America to recover $49,750 allegedly due under a fire insurance policy issued by General Agents to McClain, plus penalties and attorney fees in accordance with LSA-R.S. 22:658. The insurance company denied liability alleging that McClain intentionally set fire to his building. Alternatively, in the event it was found liable for the insurance proceeds, General Agents sought credit for $46,303.51 which it paid under the loss payable clause of the policy to the First Republic Bank of Rayville which held mortgages on the Cozy Spot property. General Agents, which took assignments of the bank's notes and mortgages, filed a separate suit against McClain seeking to recover the amount paid to the bank and to foreclose on the mortgages.
After trial of the consolidated suits, pursuant to written reasons for judgment, the district court found that the insurance company had failed to establish its arson defense and rendered judgment in favor of McClain for the amount of the insurance policy, subject to a credit for the amount paid by the insurance company to the bank conditioned on cancellation of the notes and mortgages. The district court also found the insurer arbitrary and capricious in failing to pay under the terms of the policy, and awarded McClain 12 percent of $49,750 in penalties and $5,000 in attorney fees with legal interest thereon from date of judicial demand. The insurance company's suit was dismissed.
General Agents appealed, specifying the following errors:
(1) The trial court erred in its conclusion that the insurance company failed to prove arson;
(2) Alternatively, the trial court erred in awarding legal interest on the entire amount of the policy, subject to the credit for payment made to the loss payee, and should have awarded legal interest only on the balance due on the policy;
(3) Alternatively, the trial court erred in determining that appellant was arbitrary and capricious, or without probable cause, in refusing to pay the claim; and
(4) Alternatively, the trial court erred in its determination of the amount of the penalty, and the date from which the penalties and attorney fees should bear legal interest.
McClain answered the appeal, asking that the award of attorney fees be increased to $10,000.
For the reasons set forth in this opinion we amend the judgment to eliminate the award of penalties and attorney fees, and otherwise affirm.
Arson Defense
To sustain the defense of arson, the insurer has the burden of proving by a preponderance of the evidence that the fire was of incendiary origin and that the insured was responsible for it. Proof may be, and invariably is, by circumstantial evidence. When proof is circumstantial, the evidence must be so convincing that it will sustain no other reasonable hypothesis but that the insured was responsible for the fire. Rist v. Commercial Union Insurance Company, 376 So.2d 113 (La.1979); Sumrall v. Providence Washington Insurance Company, 221 La. 633, 60 So.2d 68 (1952); Wallace v. State Farm Fire & Casualty Insurance Company, 345 So.2d 1004 (La.App. 2d Cir.1977).
*601 The appellant contends that it bore the burden of proving its arson defense by establishing that McClain was in dire financial circumstances and had motive to set the fire, that McClain acted suspiciously on the day of the fire and had the opportunity to set the fire, and that the fire was incendiary in origin as shown by the expert testimony.
The evidence establishes that McClain, who also owned rental property and other real estate, owed a substantial amount of money to the bank and other creditors, and that he was two and one-half months in arrears on his $1,000 per month payments to the bank. By copies of income tax returns, it was shown that the Cozy Spot cafe had lost money over the past several years. McClain stood to profit by the fire and collection of the insurance proceeds and consequently it can be said that he had motive to set the fire. However, the effect of this evidence is minimized by the fact that McClain's financial situation at the time of the fire was not unusual, he was chronically in arrears on his payments to the bank, and yet he made sufficient payments to satisfy the bank and no foreclosure action against him was pending or contemplated.
It was established that McClain removed some items such as a washer and dryer and a television set from the building on the day of the fire. It was further established, however, that McClain was in the process of refurbishing the place of business and that numerous other appliances, tables, chairs, a pool table, and other items were not removed from the building, and were destroyed in the fire.
McClain had the opportunity to set the fire. The fire started between 8:00 and 9:00 in the evening. In the late afternoon or early evening McClain had gone with his wife to a wiener roast in the neighborhood and then McClain returned alone to his home which is located next to the building that burned. According to his testimony, he was at home alone when notified by a neighbor that the building was on fire.
Nevertheless, as concluded by the trial court, the evidence presented by the insurance company was insufficient to establish that the fire was incendiary in origin. In its effort to prove arson the appellant relied primarily on the testimony of its expert witness, William Schulthies, a mechanical engineer and qualified fire origin analyst from California. The expert investigated the scene of the fire about a week after its occurrence. His examination of the remains of the building was concentrated almost entirely to the north 40 percent of the building where he determined that the fire had been most intense. Schulthies found four areas of the concrete slab at the north end of the building which showed strong evidence of spalling (a breakdown of the concrete by extreme heat caused by the heat boiling out moisture from the concrete and causing a disintegration leaving the area with a scalped-out type of appearance). The four separate areas where spalling was evident were under a pool table, under a steel desk in the office area, near a one-gallon can, and near a natural gas line. The witness attributed the spalling to the presence of an accelerant because of the shape of the spalled areas which were nonsymetrical as if a liquid had been poured or spilled on the slab. The witness explained that spalling caused by debris falling to the concrete surface would reflect the shape of the debris, such as a board, which was not the case here. Schulthies also found two gas pipes to which appliances were not attached and which he concluded were open at the time of the fire. Schulthies concluded that the fire was started by ignition of the accelerants on the concrete slab and was aided by the emission of natural gas.
The expert witness's conclusion that the fire started at the north end of the building was refuted by the testimony of several eyewitnesses to the fire. Two young neighbors who first discovered the fire saw smoke and sparks in the south part of the building, in which was located the cafe and an upstairs dancing area. Two other neighbors testified that the south end and not the north end of the building was burning when they first saw it. The Rayville fire chief *602 testified that the fire began in the south end of the building and that nothing he saw at the fire scene aroused his suspicion. A volunteer fireman who helped fight the fire testified that when he entered the building the flames were at the south end and not the north end. The testimony of the several eyewitnesses that flames were first observed in the south end of the building belies the expert's conclusion that the fire started at the north end of the building.
Further undermining the validity of the expert's conclusions is the fact that he made no detailed examination of the south 60 percent of the building. The expert went by the scene of the fire the day before trial, some two years after the fire, and for the first time noticed evidence of spalling in numerous areas at the south end of the building. Although the expert disclaimed any significance to these findings, it would seem that spalling throughout the building detracts from the significance attributed by the expert to the four spalled areas at the north end of the building. As admitted by the expert, spalling can be caused by intense heat without the presence of an accelerant.
The trial court correctly concluded that the insurance company failed to prove by a preponderance of the evidence that the fire was incendiary in origin, the threshold basis for its arson defense.
Penalties and Attorney Fees
Although the evidence was not sufficient to establish the arson defense, there was considerable evidence justifying assertion and litigation of the defense by the insurance company. After consultation between the deputy fire marshal and the district attorney, a bill of information charging McClain with arson was filed. There was evidence of motive for arson and of the opportunity for the insured to have started the fire. There was some objective evidence of arson, and the insurance company had before it the opinions of its experienced adjuster and the expert witness that the fire was intentionally set.
LSA-R.S. 22:658 is penal in nature and therefore must be strictly construed. Penalties and attorney fees are not assessed unless it is clearly shown that the insurer was arbitrary, capricious, and without probable cause in refusing to pay. Thomas v. McInnis Brothers Construction, Inc., 401 So.2d 522 (La.App. 2d Cir.1981); Wallace v. State Farm Fire & Casualty Company, supra.
Considering the circumstances of this case the insurer's failure to pay the proceeds of the fire insurance policy was not arbitrary, capricious, or without probable cause. The insured is not entitled to penalties and attorney fees.
Because we find that the insured is not entitled to penalties and attorney fees, we need not address the issues concerning their computation or the calculation of interest thereon, or the insured's prayer for an increase in attorney fees.
Decree
The judgment of the district court is amended to delete the award to Roy McClain, Jr. of 12 percent penalties and $5,000 attorney fees, and his demand for penalties and attorney fees is rejected. The judgments in these consolidated cases are otherwise affirmed. All costs of the appeals are assessed against the appellant.
Amended, and as amended, affirmed.

ON REHEARING
Before PRICE, HALL, MARVIN, SEXTON and NORRIS, JJ.
HALL, Judge.
A rehearing was granted in this case limited to consideration of the defendant insurance company's alternative argument that the trial court erred in awarding legal interest on the entire amount of the policy, subject to credit for the payment made to the loss payee, and that legal interest should have been awarded only on the balance due after subtracting the payment to the mortgagee. The original opinion failed to specifically address this issue.
The policy was for $50,000, less a $250 deductible. The policy contains a mortgage *603 clause naming First Republic Bank as mortgagee and providing for payment of the proceeds of the policy to the mortgagee as its interest may appear. After the fire the insurance company paid $46,303.51 to the bank and took assignments of the bank's notes and mortgages. The insurance company filed suit against its insured, McClain, seeking to recover the amount paid to the bank, plus the conventional interest stipulated in the notes and attorney fees, and to foreclose on the mortgages.
The district court rendered judgment in favor of McClain for the full amount due under the terms of the insurance policy, $49,750, subject to a credit for the amount paid by the insurance company to the bank, conditioned upon cancellation of the notes and mortgages. In its written reasons for judgment the trial court expressly rejected the insurance company's argument that it should be required to pay legal interest from judicial demand only on the difference of $3,446.49 owed to the insured. Although the judgment is not entirely clear, it is apparent that in accordance with the reasons for judgment it is intended that the credit for the payment to the bank be applied as of the date of cancellation of the notes and mortgages, the effect of which is to cast the insurance company for legal interest on the full amount of the policy until such time as the notes and mortgages are canceled.
The insurance company contends that to allow McClain to recover legal interest on the full amount of the policy would be to create a "windfall" in his favor because he will have the benefit of having had the bank indebtedness satisfied as of the date payment was made by the insurance company to the bank, stopping the running of conventional interest on the loans, and yet will also recover legal interest which at this time exceeds $10,000. The insurance company also argues that since it made payment to the bank it has not had the use of the money paid and should not be penalized by having to pay legal interest on that sum. McClain argues that the insurance company did not pay the mortgage indebtedness but only purchased the notes and mortgages from the bank, leaving his property encumbered, and that legal interest should accrue on the full amount due under the policy until the notes and mortgages are canceled.
The parties cite several cases involving similar situations in which the judgments seem to support their respective positions. See Wells v. Twin City Fire Insurance Company, 239 La. 662, 119 So.2d 501 (La.1960); Wallace v. State Farm Fire & Cas. Ins. Co., 345 So.2d 1004 (La.App. 2d Cir.1977); Baghramain v. MFA Mutual Insurance Company, 315 So.2d 849 (La.App. 3d Cir.1975); Republic Ins. Co. v. American Public Life Ins. Co., 246 So.2d 410 (La.App. 1st Cir. 1971); Stevenson v. Central National Ins. Co. of Omaha, Neb., 239 So.2d 659 (La.App. 1st Cir.1970); Headrick v. Pennsylvania Millers Mutual Ins. Co., 232 So.2d 319 (La. App. 3d Cir.1970); and Martin v. Home Ins. Co., 16 La.App. 216, 133 So. 773 (2d Cir. 1931). The judgments in most of the cited cases are not entirely clear as to the manner in which payments to mortgagees under loss payable clauses were to be credited or the manner in which legal interest was to be calculated, and, in any event, it appears that in none of the cited cases was the issue now presented directly addressed.
The damages due for delay in the performance of an obligation to pay money are called interest. The creditor is entitled to these damages without proving any loss, and whatever loss he may have suffered he can recover no more. LSA-C.C. Art. 1935. All debts shall bear interest at the legal rate from the time they become due, unless otherwise stipulated. LSA-C.C. Art. 1938.
The defendant insurance company contracted with the insured to insure his property for $50,000 and in the event of a covered loss to pay the proceeds of the policy, less the deductible amount, to the insured or for his account to the mortgagee named in the policy, as the mortgagee's interest might appear. The insurance company's obligation or debt, after the loss, was for the payment of money for the insured's account to the bank in discharge of the mortgage indebtedness owed.
*604 Instead of paying the bank for the insured's account in discharge of the indebtedness owed by the insured to the bank, the insurance company purchased the notes and mortgages from the bank. This left the insured in precisely the same position as he was prior to payment by the insurance company to the bank. He derived no present benefit whatsoever from the payment made by the insurance company to the bank at the time of the payment. He remained subject to suit for the balance due on the notes and was in fact sued by the insurance company on the notes and for foreclosure of the mortgages. His property remained encumbered by the mortgages, limiting his use of the insured property, specifically in that he was not able to obtain a new mortgage loan to rebuild the destroyed building or for any other purpose. He was, in effect, deprived of the use of the money owed by the insurance company under the terms of the policy during the pendency of this suit through the date of satisfaction and cancellation of the notes and mortgage indebtedness.
It begs the point to argue that the effect of the judgment in this case is that the insured will not have had to pay conventional interest to the bank on the mortgage indebtedness after the date the insurance company bought the notes and mortgages from the bank. Had the insurance company complied with its obligation to discharge the mortgage loan after the fire, the insured would not have had to pay conventional interest and his property would have been unencumbered. As it is, his property has remained encumbered and to this extent he has suffered loss by reason of the insurance company's failure to pay its debt. During the pendency of this suit the insurance company has delayed in the performance of its obligation to pay money for the insured's account. Under LSA-C.C. Art. 1935, interest is due for this delay in performance of the obligation to pay money without proof of loss by the creditor, although it is clear in this case that the creditor/insured has suffered loss as previously explained, and the damages in the form of legal interest awarded do not amount to a "windfall".
It also begs the point to argue that the insurance company has not had the use of the money because it paid the amount owed to the bank. The insurance company bought the notes and mortgages and sought to recover from the insured the amount of the notes plus conventional interest. It traded one asset, money, for another asset, the notes, and in this sense continued to have the use of the money owed under the insurance contract. The decision to purchase the notes from the bank rather than to pay the bank the amount of the indebtedness for the insured's benefit was a business decision on the part of the insurance company, and was made at its own risk.
The insured prayed for legal interest from judicial demand. His answer to the appeal does not question the commencement date and he makes no argument on appeal that interest should commence at any earlier date. Accordingly, the commencement date for legal interest is not at issue and has not been considered by this court. Compare Trico Services Corp. v. Houston General Ins., 414 So.2d 1313 (La. App. 2d Cir.1982).
For the reasons assigned, the original opinion and decision of this court affirming that part of the judgment of the district court which awarded legal interest on the entire proceeds of the insurance policy from date of judicial demand until cancellation of the notes and mortgages assigned by the bank to the defendant insurance company is reinstated and made the final judgment of this court.