Hardin & Coleman, of Shreveport, for appellant.

Dimick & Hamilton, of Shreveport, for appellees.

DREW, Judge.

Plaintiffs instituted this suit for an amount alleged to be due for loss by fire of an automobile insured with the defendant company, together with statutory penalty and attorney's fees provided for in Act No. 59 of 1921. (Ex. Sess.)

Defendant pleaded an exception of prematurity, which plea was overruled. It then filed a plea of unconstitutionality of Act No. 59 of 1921 (Ex. Sess.), which plea was submitted; it then answered, and the case was tried upon the merits, resulting in judgment for plaintiffs in the sum of $390. The prayer for penalty and attorney's fees was not allowed.

Defendant appealed from this judgment, and plaintiffs have answered the appeal, praying that the judgment be increased by allowing the statutory penalty and attorney's fees.

## HAMMETT et al. v. FIRE ASS'N OF PHILADELPHIA. *

No. 4635.

Court of Appeal of Louisiana. Second Circuit.

Nov. 2, 1934.

The record shows that the plaintiff Hammett was the owner of a Chevrolet automobile upon which plaintiff Fowler Commission Company, Incorporated, had a chattel mortgage. This automobile was insured by the defendant company against loss by fire or theft, on October 13, 1931, for a period of one year, for the amount of $400. The automobile was destroyed by fire on January 31, 1932; and on the same day plaintiff Hammett notified the representative of the insurance company. The loss was investigated, and plaintiff furnished with blanks on which to make the proof of loss. Upon these forms plaintiff made proof of loss and filed same with the defendant on March 25, 1932.

Plaintiffs and defendant were unable to agree as to the value of the car and the loss and damage from said fire, and on May 13, 1932, defendant tendered to plaintiffs a written proposal for an appraisal, and at the same time named R. W. McFarlane as the appraiser for defendant. Plaintiffs immediately selected Valentine Daniels as their appraiser. By reason of the failure of the appraisers to agree upon an umpire, it was not until July 18, 1932, that an umpire was selected. This was more than two months after the signing of the appraisal agreement; more than three months after the filing of proof of loss; and nearly six months after the fire. The two appraisers and the umpire were unable to agree upon the said loss, so the appraisal came to naught.

On July 23, 1932, defendant wrote plaintiffs and demanded another appraisal, in which letter it named its appraiser. Plaintiffs declined to have another appraisal, and on August 2, 1932, filed this suit.

Defendant filed an exception of prematurity, which was submitted on an agreed statement of facts and overruled by the lower court. This exception is based upon the following provisions of the insurance policy sued on in this case:

"Appraisal: In case the Assured and this Company shall fail to agree as to the amount of loss or damage, each shall, on the written demand of either, select a competent and disinterested appraiser. The appraisers shall first select a competent and disinterested umpire; and failing for fifteen days to agree upon such umpire, then, on request of the Assured or this Company, such umpire shall be selected by a judge of a court of record in the County and State in which the appraisal is pending. The appraisers shall then appraise the loss and damage, stating separately sound value and loss or damage; and failing to agree, shall submit their differences only to the umpire. An award in writing of any two, when filed with this Company, shall determine the amount of sound value and loss or damage. Each appraiser shall be paid by the party selecting him and the expenses of appraisal and umpire shall be paid by the parties equally. * * *

"Payment of Loss: This Company shall not be held to have waived any provision or condition of this policy or any forfeiture thereof by any requirement, act or proceeding on its part relating to the appraisal, or to any examination herein provided for; and the loss shall in no event become payable until sixty (60) days after the notice, ascertainment, estimate and verified proof of loss herein required have been received by this Company: and if appraisal is demanded, then, not until sixty days after an award has been made by the appraisers.

"Suit Against Company: No suit or action on this policy or for the recovery of any claim hereunder, shall be sustainable in any court of law or equity unless the Assured shall have fully complied with all the foregoing requirements, nor unless commenced within twelve months next after the happening of the loss; provided that where such limitation of time is prohibited by the laws of the State wherein this policy is issued, then and in that event no suit or action under this policy shall be sustainable unless commenced within the shortest limitation permitted under the laws of such State.

"Limitation of Liability and Method of Determining Same: This Company's liability for loss or damage to the automobile described herein, shall not exceed the actual cash value thereof at the time any loss or damage occurs, and the loss or damage shall be ascertained or estimated accordingly, with proper deduction for depreciation however caused, and without compensation for loss of use; and shall in no event exceed the limit of liability, if any, stated in Paragraph C, nor what it would then cost to repair or replace the automobile or parts thereof with other of like kind and quality; and such ascertainment or estimate shall be made by the Assured and this Company, or if they differ then by appraisal as hereinafter provided."

The agreed statement of facts upon which the exception of prematurity was submitted is as follows:

"It is agreed by and between the undersigned counsel that plaintiffs gave the defendant's agents immediate notice of the fire in this case, and that on March 27, 1932, plain-

tiffs filed a formal proof of loss with the defendant upon the form furnished by said defendant company.

"Upon the receipt of said proof of loss the plaintiffs and defendant began negotiations leading to an agreement of the loss and damage to the automobile in question as a result of said fire, but in the course of said negotiations there developed a serious dispute between the plaintiffs and defendant as to the actual loss and damage from said fire, and after all efforts to amicably agree upon such loss and damage had been exhausted, the plaintiffs and defendant on May 13, 1932, entered into a formal written agreement to appraise such loss and damage, which agreement is attached to the defendant's exception of prematurity in this case, and in which agreement R. W. MacFarlane was selected as the appraiser for the defendant and Valentine Daniels was selected as the appraiser for plaintiffs.

"Thereafter the said selected appraisers appointed D. A. Woodard, of Arcadia, Louisiana, to act as the umpire and on July 18, 1932, the said appraisers and umpire met at Gibbsland for the purpose of appraising such loss and damage, but said appraisers and umpire were unable to agree upon such loss and damage, were unable to appraise the loss, and were unable to return an award.

"It is further agreed that the failure of the selected appraisers and the appointed umpire to agree upon and return an award as to the loss and damage under the policy in question was caused through no fault of the plaintiffs or the defendant company.

"It is further agreed that on July 23, 1932, the defendant wrote the plaintiffs the letter that is copied and set forth in Article 2 of defendant's exception of prematurity.

"It is further agreed that the plaintiffs and the defendant have acted in the premises under a Non-Waiver agreement previously entered into between them.

"It is further agreed that the defendant's exception of prematurity will be submitted on this stipulation and agreement of counsel without argument and upon briefs to be filed with the District Judge within ten days from the date hereof."

The policy of insurance also contains the following provision: "Any and all provisions of this policy which are in conflict with the statutes of the State wherein this policy is issued, are understood, declared and acknowledged by this Company to be amended to conform to such statutes."

And following this provision there is incorporated in the policy in full Act No. 168 of 1908, which is identical with Act No. 59 of 1921 (Ex. Sess.), except in the 1921 act there is included insurance against theft, and the penalty is fixed at 25 per cent. of the amount recovered by the insured, instead of 12 per cent., as in the act of 1908.

By the very wording of this policy, as well as by law, Act No. 59 of 1921 (Ex. Sess.) becomes a part of the contract of insurance between the insurer and the assured. Section 3 of that act reads as follows:

"Section 3. That whenever any loss or damage shall be suffered in this State from fire and theft by any person, firm or corporation, upon property insured under a policy of insurance of any fire insurance or theft insurance company doing business in this State it shall be the duty of the fire or theft insurance company that has issued the policy or policies upon receipts of proofs of loss from the assured, to pay the amount due under its policy or policies, within sixty days thereafter, or if the said proofs of loss are not satisfactory to the company, it shall be the duty of the company to proceed under the terms of the policy or policies to ascertain and adjust the amount of the loss and its liability under the terms of the policy or policies and to make payment of the amount due under policy or policies to the insured within sixty days from date upon which it received the proofs of loss offered by the assured, and should the company fail to pay, within said time the amount due the insured under the policy after demand made therefor, such company shall be liable to pay the holder or holders of such policy in addition to the amount of the loss, twenty-five per cent damages on the total amount of the loss as may be determined by a court of competent jurisdiction together with all reasonable attorney's fees for the prosecution and collection of such loss; provided that whenever the insurance company shall pay to the insured within sixty days from the date upon which it received the proofs of loss, offered by the assured the amount which its adjuster or agent has determined or admitted to be due, then in that case the insured shall only recover from the said insurance company the difference between the amount thus paid him and the amount judicially ascertained to be actually due under the policy together with twenty-five per cent damages on said difference and all reasonable attorney's fees for the prosecution and collection of such loss."

The unambiguous language of this quoted section clearly and unequivocally makes it the duty of the insurer to pay to the insured the amount due under the policy within sixty days from the date it receives the proof of loss offered by the insured. If the insurer is not satisfied with the amount claimed by the insured, it then becomes its duty to pay the amount it considered due and litigate over the difference. In either event, it must pay within 60 days or it becomes subject to and liable for the penalties provided for in the act. When the insurer included in the policy a provision making the payment due within 60 days after the award of the appraisers has been made, it included a provision that is in direct conflict with section 3 of Act No. 59 of 1921 (Ex. Sess.), and the included provision in the policy can be of no effect.

Defendant relies upon and cites many cases from other jurisdictions in support of its exception of prematurity. The cases cited from other jurisdictions fail to show that the respective states in which the cases were tried had a law similar to Act No. 59 of 1921 (Ex. Sess.); and, furthermore, they do not disclose any conflict between the contract of insurance and the statutory laws of the respective states.

Defendant further relies upon the case of Headley v. Commercial Standard Insurance Company of Dallas, Texas, 17 La. App. 25, 134 So. 305, in which case the First Circuit Court of Appeal of this state held that, where an umpire under an arbitration clause had proceeded improperly, the arbitration award will be set aside and the case remanded to the lower court for the purpose of affording to both parties the right to submit their differences to arbitration. A careful reading of this case clearly convinces us that it is not authority for the contention of prematurity made by defendant. At no place in the opinion is Act No. 59 of 1921 (Ex. Sess.) referred to; no penalties were sued for; and it cannot be presumed that the 60-day period had elapsed before suit was filed. The opinion discusses the case without reference to Act No. 59 of 1921 (Ex. Sess.), and is of no assistance in determining the question at bar.

The case of Officer v. American Eagle Fire Insurance Company, 175 La. 581, 143 So. 500, is authority only for the validity of a clause or provision in an insurance policy which provides for submission to arbitration of the differences between the insured and insurer as to the amount due under the policy. It does not refer to nor discuss the time within which the arbitration must be had, which time is fixed by Act No. 59 of 1921 (Ex. Sess.).

The case of Kiblinger v. American National Insurance Company, 171 La. 560, 131 So. 670, 671, also cited by defendant, is not in point.

In the case of Mayer v. Security Union Insurance Company, 8 La. App. 308, the syllabus of the case correctly sets out the finding of the court. It is as follows:

"Act 59 of 1921 places the burden of the initiative in the matter of adjustment of losses of automobiles on the insurer and intends that it shall act promptly. Therefore, insurer is not justified in doing nothing because the insured did not sign an appraisal agreement containing the name of his appraiser and send same to the insurer as requested.

"Where insurer does nothing within sixty days in regard to the settlement of a fire loss of an automobile because of failure of insured to sign an appraisal agreement containing name of appraiser, the insured can recover the amount of the loss plus twenty-five per cent penalty and attorney's fees."

In the case of New v. Union Automobile Insurance Company, 137 So. 563, 564, this court said:

"The defendant made timely demand for an appraisal but pursued that demand tardily; as on June 20th, when the agreement for submission to appraisers was finally consummated, more than sixty days had elapsed from the time proofs of loss were delivered to it.

"Section 3 of Act No. 59 of 1921 (Ex. Sess.), in part, provides:

" '* * * It shall be the duty of the fire or theft insurance company that has issued the policy or policies upon receipts of proofs of loss from the assured, to pay the amount due under its policy or policies, within sixty days thereafter, * * * and should the company fail to pay, within said time the amount due the insured under the policy after demand made therefor, such company shall be liable to pay the holder or holders of such policy in addition to the amount of the loss, twenty-five per cent damages on the total amount of the loss as may be determined by a court of competent jurisdiction together with all reasonable attorney's fees for the prosecution and collection of such loss.'

"In the case of Mayer v. Security Union Insurance Company, 8 La. App. 308, it is stated:

" 'The law places the burden of the initiative in the matter of adjustment on the insurer and intends that it shall act promptly.'

"The defendant did not act promptly in submitting the agreement to plaintiff, and we are convinced that if plaintiff had refused to sign the submission on June 20th he would have

been legally justified in such refusal and may have immediately pursued his remedy in the courts. But as he did sign the agreement, and it is presumed that he acted with full knowledge of his legal rights, he was estopped from instituting this suit with reference to the amount in dispute and subject to arbitration under the agreement, until a reasonable time had elapsed in which the agreement might have been executed."

In the case of Hart v. Springfield Fire & Marine Insurance Company, 136 La. 114, 66 So. 558, 561, the Supreme Court said:

"The Act No. 168 of 1908 makes it the duty of the insurer, on receipt of a notice of loss, to furnish the insured with blank forms for the proof of loss, wherein the insured is required to give the company certain detailed information mentioned in the statute. A failure or neglect on the part of the company to give the insured the blank forms for proof of loss shall be deemed a waiver of the requirement to furnish the proof of loss, and in a suit on the policy the insurer shall not be heard to complain of the failure of the insured to furnish the proof of loss, notwithstanding such requirement or condition in the contract. If the proof of loss furnished by the insured is satisfactory to the insurer, it is the duty of the company to pay to the insured the amount of the loss shown to be due within 60 days after the receipt of the proof, or it will be liable to a penalty of having to pay the insured, in addition to the amount of the loss, 12 per cent. thereon as damages and a reasonable attorney's fee. If the proof of loss submitted by the insured is not satisfactory to the company, it then becomes the duty of the company—and a fortiori it is then the right of the company—to proceed with an appraisement and adjustment of the loss and liability under the terms of the policy. And, in this event, if the company fails or neglects to pay the insured the amount of the loss thus ascertained to be due under the policy within 60 days from the date on which the company received the proof of loss submitted by the insured, the company shall be liable for the penalty above stated. The statute finally provides that, whenever the insurance company shall pay to the insured, within 60 days from the date on which it received the proofs of loss offered by the insured, the amount which its adjuster or agent has determined or admitted to be due, the insured shall only recover the difference between the amount paid and the amount judicially ascertained to be actually due under the policy, together with 12 per cent. damages on this difference and reason-

able attorney's fees. Hence it is plain that the company is not liable to the statutory penalty for withholding the amount of its liability admitted by its agent or adjuster, as long as the insured refuses to submit to an appraisement; for the insurer has a right to an adjustment of its liability before being penalized for not paying it. The provision that the company may pay the amount of liability admitted by its agent or adjuster, and thereby protect itself pro tanto from the penalty, is advantageous to the insured, in that he may accept the payment and reserve his right to recover any additional amount that may be judicially ascertained to be due him; but it does not absolve him of his obligation in the contract to submit to an appraisement."

■ In the case at bar, the plaintiffs readily assented to submit the differences as to the amount due to appraisers when requested to do so by defendant, at a time within the 60-day period after plaintiffs had made proof of loss, and did not refuse to submit the matter to appraisers the second time until after the 60-day period had elapsed. We think plaintiffs were justified in law in refusing to submit to a second appraisal, and, after the expiration of the 60-day period, they were justified in law in filing suit and their suit was not premature, under Act No. 59 of 1921 (Ex. Sess.) and the decisions referred to above; and they are also entitled to penalties and attorney's fee, as fixed by said act. Isaac Bell v. Security Insurance Company, 175 La. 599, 143 So. 705.

■■ Defendant attacked the constitutionality of Act No. 59 of 1921 (Ex. Sess.) on the following grounds: That said act is arbitrary, unequal, and oppressive; that it is arbitrary because it requires payment of loss within 60 days, regardless of the then pending appraisal proceedings; that it is unequal because it penalizes companies writing automobile insurance for failure to pay within 60 days, whereas other companies writing other kinds of insurance are not so penalized or are penalized in a different degree; that it is oppressive because the penalties and attorney's fees are unreasonable and violate the rudiments of fair play.

Act No. 59 of 1921 (Ex. Sess.) operates alike upon all insurance companies writing automobile insurance against theft and fire. It is therefore no imposition, is not arbitrary or unequal, as the same penalty for failure to pay the amount due within 60 days operates against all insurance companies writing similar insurance in the state of Louisiana. A very wide discretion must be conceded to the

legislative powers of the state in the classification of trades, callings, businesses, and occupations which may be subjected to special forms of regulation. A wide discretion must likewise be given the Legislature in its regulation of insurance companies doing business within the state. A penalty of 25 per cent. for failure to pay just claims due by the insurance companies within 60 days after offered proof of loss cannot be said to be unreasonable, and the act itself specifically says the attorney's fees shall be reasonable. The Constitution of the state does not prohibit this kind of legislation, and, since there is nothing unreasonable or unequal in the application of the act, the attack on the constitutionality of it is without merit, for it is well recognized that the power to regulate the manner of carrying on an insurance business within this state is within the power of the state Legislature.

The lower court found the value of the car at the time it burned to be $400; it found the value after it burned to be $10; and it gave judgment for the difference, which was $390, and rejected the demands for penalties and attorney's fees. We find no error in the lower court's finding as to the value of the car; however, the statutory penalties and attorney's fees should have been allowed. A reasonable fee in this case, we think, is $100.

It therefore follows that the judgment of the lower court is amended by allowing the penalty of 25 per cent., on the amount of the judgment awarded, as fixed by Act No. 59 of 1921 (Ex. Sess.); and further amended by granting to plaintiffs judgment for attorney's fees in the sum of $100; and, as amended, the judgment of the lower court is affirmed, with costs.