Phyllis LAZLO, Plaintiff-Appellant,

v.

STATE FARM FIRE & CASUALTY COMPANY, Defendant-Appellee.

No. 85–3192.

United States Court of Appeals, Fifth Circuit.

Aug. 13, 1986.

Darleen M. Jacobs, S. Sanford Levy, New Orleans, La., for plaintiff-appellant.

Clement P. Donelon, Metairie, La., for Jefferson Guar. Bank.

William A. Porteous, III, Michael K. Fitzpatrick, Peter M. Meisner, New Orleans, La., for State Farm.

Before GEE, RANDALL, and GARWOOD, Circuit Judges.

GARWOOD, Circuit Judge:

Plaintiff-appellant Phyllis Lazlo appeals the district court's holding in her Louisiana diversity suit against defendant-appellee State Farm Fire & Casualty Company (State Farm) that for the purposes of deter-

mining under LSA–R.S. 9:5001 the amount of a "first privilege" granted attorneys over other creditors on judgments and property recovered by them for their clients, the amount of the judgment recovered by her attorney was only the net amount payable by State Farm directly to Lazlo after an offset to State Farm's total liability under its fire insurance policy for payments made to a mortgagee, and not the total amount of the policy. Lazlo also complains of the district court's ruling that only the lesser net amount accrued interest in her favor against State Farm. Additionally, Lazlo appeals the district court's determination that only forty percent of her attorney's out-of-pocket costs taxable against State Farm were includable as part of the attorneys' fees privilege, and she asserts that all such costs, regardless of whether they are taxable against State Farm, should be included. We agree with Lazlo on all counts, and we reverse the judgment of the district court and render judgment for Lazlo on these issues.

### Facts and Proceedings Below

On August 9, 1980, Phyllis Lazlo's house was destroyed by fire. At the time of the fire, Lazlo's house was insured by State Farm. There was a $21,500 mortgage outstanding on her residence payable to the Lomas and Nettleton Company (Lomas and Nettleton) who, as mortgagee, was also named as loss-payee in Lazlo's insurance policy with State Farm. As loss-payee, Lomas and Nettleton was entitled to receive the first sums paid under the policy up to the amount of the outstanding balance of the mortgage; only after the mortgagee debt was paid could Lazlo take under the policy. The policy limit was $60,000.

Subsequent to the fire, State Farm, on September 30, 1981, paid the mortgagee the $21,500 balance, but only after Lazlo had made amicable demand for payment under the policy and had filed suit when payment was not forthcoming. The policy, by its express terms, required State Farm to pay the mortgagee. On State Farm's payment of the $21,500 to Lomas and Nettleton, the mortgage was *not* released, but the note and mortgage were rather *assigned* by Lomas and Nettleton to State Farm. State Farm continued to hold the note and mortgage, although it did not make any demand for payment of either interest or principal from Lazlo after the fire.

Lazlo filed the present suit against State Farm in July 1981. State Farm defended, *inter alia,* on the grounds of arson. The jury found that the fire which destroyed the house was purposely set, but that neither Lazlo nor anyone acting for her were responsible for this, and that she was not guilty of concealment or misrepresentation. In August 1983, the district court rendered judgment on the jury verdict for Lazlo and against State Farm, as follows:

"IT IS FURTHER ORDERED, ADJUDGED AND DECREED that there be judgment in favor of plaintiff, Phyllis Lazlo, and against defendant, State Farm Fire and Casualty Company, in the sum of $60,000.00 under the policy of insurance less the amount of $21,500.00 paid by the defendant, State Farm Fire and Casualty Company, as mortgage payments, giving plaintiff a judgment in the sum of $38,500.00 plus interest and costs."

State Farm appealed on a supersedeas bond, and in December 1984, this Court affirmed in an unpublished opinion. *Lazlo v. State Farm Fire and Casualty Company,* 750 F.2d 67, 5th Cir., December 8, 1984.[1] Our mandate issued on December 26, 1984.

In January 1985, State Farm tendered into court the sum of $57,761.57 "representing the abovesaid judgment of the trial court, including estimated costs of court and judicial interest." State Farm alleged that various creditors of Lazlo, including seizing judgment creditor appellee Jefferson Guaranty Bank, claimed an interest in

---

**1.** Lazlo's suit also included claims against State Farm for anxiety and false arrest. The district court dismissed these claims in its August 1983 judgment; Lazlo cross-appealed, and our referenced opinion affirmed this aspect of the district court's judgment as well.

sums due Lazlo under the judgment. State Farm also alleged that a dispute had arisen with Lazlo as to whether interest was due on the entire $60,000 principal amount of the judgment, or only on the $38,500 thereof payable directly to Lazlo. State Farm moved at the same time for an order determining the amounts due under the judgment and to whom the judgment funds should be distributed. In its motion papers, State Farm alleged that it had been assigned and held the note and mortgage on the Lazlo property "and is ready and willing to give to Phyllis Lazlo the said mortgage note and cancel" the mortgage. It also prayed that its supersedeas bond given in reference to the August 1983 judgment "remain in full force and effect during the pendency of all proceedings to determine the amount due under this judgment." As State Farm's pleadings reflect, it calculated the $57,761.57 as follows: $38,500 as the amount of the $60,000 policy less the $21,500 paid to the mortgagee; $16,170 as interest at twelve percent per annum for three and a half years, or from July 1981 to January 1985, on the $38,500; and $3,091.57 as court costs.

The parties do not dispute that $3,091.57 is the amount of court costs for which State Farm is liable under the judgment; nor do they dispute that the rate of interest owed by State Farm is twelve percent per annum, and that the period for which such interest is owed is the forty-two months, or three and a half years, from July 1981 to January 1985. Lazlo, however, claims that the twelve percent interest for this period should be calculated on the entire $60,000, which the parties agree would produce a total of $25,200 in interest, while State Farm claims that the calculation should be only on the $38,500, which the parties agree would produce a total of $16,170.

Appellee Jefferson Guaranty Bank, a seizing judgment creditor of Lazlo, and others analogously situated, claimed that they were entitled to the funds due Lazlo under the judgment. Lazlo and her attorney, who prosecuted the suit against State Farm on its insurance policy, contended that the attorney had a "first privilege" in the judgment proceeds for her attorney's fee, with priority over all other creditors of Lazlo. This claim was based on a forty percent contingent fee contract which Lazlo and her attorney entered into with respect to her suit against State Farm. The extent of the attorney's "privilege" is disputed, the other creditors claiming that it extends only to the $38,500 (and the interest thereon), while Lazlo and her attorney contend that it extends to the $60,000 (and the interest thereon). Lazlo and her attorney also claimed that the attorney's privilege extended to one hundred percent of the attorney's out-of-pocket costs, both the $3,091.57 included in the judgment as taxable court costs and $2,186.89 other out-of-pocket costs.[2] This was disputed by the other creditors, who asserted that the privilege extended only to forty percent of the $3,091.57. No party, however, questioned that Lazlo's attorney legitimately incurred reasonable out-of-pocket expenses in prosecution of the suit in the total amount of $5,278.46, $3,091.57 of which were represented by the taxable court costs. It was conceded at oral argument that Lazlo is and was destitute, and that her attorney and the other creditors must look to the judgment for any recovery they will actually be able to effect. It is further undisputed that Lazlo's attorney fully earned the amount of fee which she claimed, and that the contingent fee agreement was fair and proper.

The district court ruled that State Farm was liable for interest only on the $38,500 and that its $57,761.57 tender in January 1985 (together, presumably, with its then tender of the mortgage note and mortgage to Lazlo) fully discharged its liability under the judgment. The court also ruled that Lazlo's attorney's first privilege extended only to forty percent of the $38,500, plus forty percent of the interest thereon (forty percent of $16,170), plus forty percent of

---

**2.** No claim is made by anyone that State Farm was liable for more than the $3,091.57 taxable court costs; and State Farm does not question its liability under the judgment for that amount.

the $3,091.57 court costs, for a total privilege to the attorney of $23,104.63 (the remainder of the $57,761.57 being awarded to the other creditors). In the present appeal, Lazlo complains of these rulings. We agree with Lazlo's contentions, and reverse.

## Discussion

### Amount of Judgment

Louisiana law grants a "first privilege" to attorneys for their attorneys' fees on judgments recovered by them for their clients. LSA–R.S. 9:5001 provides:

> "A special privilege is hereby granted to attorneys at law for the amount of their professional fees on all judgments obtained by them, and on the property recovered thereby, either as plaintiff or defendant, to take rank as a first privilege thereon."

Because the fee contract between Lazlo and her counsel was on a contingency fee basis and provided for a fee of forty percent of both the principal and interest recovered,[3] we must first determine the amount to be used as a base figure in computing both the legal interest and the fee. As the August 1983 judgment is ambiguous on the point at issue, and it was not in contention until after our affirmance, we resolve this matter by reference to the applicable substantive law.

It is clear in this Circuit that state law governs the award of interest in a diversity suit, notwithstanding 28 U.S.C. § 1961, the federal legal interest statute. *See Delegos Bros. Grain Corp. v. Fireman's Fund Ins. Co. of Texas*, 498 F.2d 1238 (5th Cir.1974); *Texaco, Inc. v. Lirette*, 410 F.2d 1064 (5th Cir.1969). Louisiana law, applicable in this diversity suit, defines legal interest as damages for the delay in the performance of an obligation to pay money, and these damages are due without any proof of loss. *See McClain v. General Agents Insurance Company of America, Inc.*, 438 So.2d 599, 603 (La.Ct.App.1983) (discussing LSA–C.C. art. 1935, the Louisiana statute for legal interest). Such interest is a ceiling for recovery for breach of an obligation to pay money. *Id.* Moreover, a debt in Louisiana bears interest from the date it falls due, unless otherwise stipulated. *Id.* (discussing LSA–C.C. art. 1938).

*McClain*, though not brought to our (or the district court's) attention by any of counsel for the parties, is controlling. The facts in *McClain* are directly on point here. In *McClain* an insurance company paid a mortgage after a fire claim arose, and took an assignment of the mortgage. Judicial demand was made upon the insurance company for $50,000, the face amount of the policy. The insurance company was held liable for the full amount, subject to a $46,000 offset for the amount paid to the mortgagee. The district court accordingly reduced the principal amount owed to the insured under the judgment to $4,000; it also held the amount on which legal interest would be calculated was $4,000. The Louisiana appellate court reversed the district court and held that the entire policy limit, $50,000, was the correct amount for purposes of computing interest. The court in *McClain* reasoned that since the entire policy limit was due from the date of judicial demand, then interest accrued on the whole debt once demand was made. Thus *McClain* made it clear that the whole amount of the policy was the applicable debt (and judgment), not just the net amount payable by an insurance company after a subsequent legal determination.

---

**3.** The fee agreement between Lazlo and Darleen M. Jacobs, Lazlo's counsel, specified the following payment plan:

> "For and in consideration of the legal services rendered and to be rendered by the aforementioned attorney and/or attorneys, I/We do hereby assign, transfer and convey all of my/our rights, title, and interest in the above claim to the extent of (40%) per centum *$60,000.00 plus interest and costs* any and all sums collected or rights and/or interest obtained, including any recovery for medical expenses before suit is filed, and (40%) per centum after suit is filed." (Emphasis added.)

We observe that the crucial provision in the present dispute providing for forty percent of "$60,000.00 plus interest and costs" was an interlineation (emphasized in the above quote) and was not part of the preprinted attorney's fee form agreement.

*Id.* at 603–04. We find *McClain* dispositive because both the facts and the legal reasoning are completely analogous to the case before us.

It is crucial in this connection that State Farm did not "pay off" the mortgage; it bought the mortgage. Consequently, if there had been a judgment in State Farm's favor, Lazlo could have been sued under the mortgage for the $21,500 principal plus any interest accrued thereon. Indeed, State Farm candidly conceded at oral argument that this was its purpose in purchasing, rather than paying off, the mortgage, and that if it eventually prevailed in the suit on the policy it intended not only to collect from Lazlo (or her lot) the $21,500 mortgage balance but also all the contractual mortgage interest thereon. As the *McClain* court noted when confronted with the argument that the insurance company no longer had use of the funds after making payment to the mortgagee:

> "The insurance company bought the notes and mortgages and sought to recover from the insured the amount of the notes plus conventional interest. It traded one asset, money, for another asset, the notes, and ... [t]he decision to purchase the notes from the bank rather than to pay the bank the amount of the indebtedness for the insured's benefit was a business decision on the part of the insurance company, and was made at its own risk." *McClain*, 438 So.2d at 604.

Thus the mortgage debt still existed; only the identity of the mortgagee changed.

State Farm claims that since it voluntarily forebore from collecting interest on the mortgage from Lazlo, it should at least be granted an offset. Lazlo gained, appellee argues, since she paid no interest on the mortgage after judicial demand was made

and State Farm bought the mortgage. State Farm claims it was as if the mortgage had been paid off because Lazlo made no further payments under it. State Farm thus concludes that equitable and economic considerations demand that Lazlo receive interest only on the net amount because the economic realities of this case are that the forebearance of interest by State Farm is functionally equivalent to the cancellation of the mortgage.

■ Although at first blush we find this argument appealing, we also find that it cannot withstand the analysis in *McClain*. There the court stated:

> "It begs the point to argue that the effect of the judgment in this case is that the insured will not have had to pay conventional interest to the bank on the mortgage indebtedness after the date the insurance company bought the notes and mortgages from the bank. Had the insurance company complied with its obligation to discharge the mortgage loan after the fire, the insured would not have had to pay conventional interest *and* his property would have been unencumbered." *McClain*, 438 So.2d at 604 (emphasis in original).

We thus reject State Farm's contention, and we find that legal interest runs on the $60,000 gross amount of the policy from the date the debt fell due until State Farm tendered payment of the judgment in January 1985.[4]

■ We find no reason to differentiate the amount of recovery for the purpose of computing legal interest, as was at issue in *McClain*, from the amount of recovery for the purpose of computing an attorney's contingent fee. Moreover, the express language of the statute governing the Louisiana attorneys' fee privilege lends additional support to our interpretation apart from

---

**4.** We also note that the contractual rate of interest on a mortgage may vary widely from the conventional legal rate of interest. Here the mortgage rate was 8½ percent. The legal rate was twelve percent. State Farm has made no claim here or below that the actual contractual mortgage interest that it forebore from collecting from Lazlo after it bought the mortgage

should have been used to offset the amount of legal interest it owed to Lazlo. Therefore, we do not consider this possibility. *See, e.g., Clark v. Aetna Casualty & Surety Company*, 778 F.2d 242, 249 (5th Cir.1985); *Stanley Educational Methods v. Becker C.P.A. Review*, 539 F.2d 393, 394 (5th Cir.1976).

the dictates of *McClain,* for LSA–R.S. 9:5001 specifically states that the attorneys' fees privilege comes out of "all judgments obtained by them and *on property recovered thereby.*" (Emphasis added.) The mortgage was property until it was cancelled by virtue of the January 1985 tender by State Farm following the credit in the judgment, because the mortgage had been bought, not paid off, by State Farm. It is clear for fee privilege purposes that such cancellation *at least* comprises "property recovered" by counsel for Lazlo. Lazlo's attorney thus "recovered" a total of $60,000 for her client, $21,500 in cancellation of mortgage debt and $38,500 additional.[5]

Consequently, we find the appropriate amount for the purposes of determining legal interest to be $60,000, and that interest is due on this amount from July 1981 until January 1985 when State Farm tendered payment of the judgment. Lazlo's attorney is to receive forty percent of this interest under her contingent fee contract with Lazlo. Under this contract, Lazlo's attorney is also due forty percent of the $60,000 principal recovery. Both of these amounts are includable as part of a first privilege for attorneys' fees under Louisiana law because both are covered by the terms of the contingent fee contract.

*Costs*

Under Lazlo's contract with her attorney, Lazlo was to pay counsel forty percent of "$60,000 plus interest and costs." For the purposes of granting Lazlo's attorney a fee privilege, the district court gave Lazlo's attorney a privilege on only forty percent of the attorney's out-of-pocket costs which were taxable against defendant State Farm under the judgment. Additional out-of-pocket costs incurred by the attorney were not allowed as part of the fee

privilege. Lazlo and her counsel complain that both taxable and nontaxable costs should have been fully included in the fee privilege. We agree with appellant and hold that the district court erred in failing to include in the privilege one hundred percent of the attorney's out-of-pocket costs. There is no question as to the reasonableness and propriety of these out-of-pocket costs.

The district court apparently literally interpreted the fee arrangement between Lazlo and her counsel to mean counsel could receive from her client only forty percent of her out-of-pocket costs because of the lack of a comma separating "costs" from the other aspects of the contingent fee. This interpretation equates costs with legal interest and the amount of the judgment as another sum of which Lazlo's counsel is to receive forty percent. The district court further restricted the attorney to recovery respecting items which were taxable costs.

There was apparently no dispute between Lazlo and her counsel over the fact that Lazlo was to pay her counsel the full amount of her counsel's out-of-pocket expenditures in accordance with the fee arrangement. The appellee most concerned with this problem, Jefferson Guaranty Bank, also does not question that Lazlo and her attorney had reached this interpretation of the contract.

Attorneys do not as a rule work for a percentage of their costs, for these expenditures are expected to be reimbursed *in full.* Actual fee arrangements can differ, but attorneys usually do receive all their actual out-of-pocket costs, taxable or not, from their clients; indeed, it is generally considered unethical for an attorney to ad-

---

5. Appellees mistakenly rely on *American Bank & Trust Company v. Byron,* 347 So.2d 850, 852–53 (La.Ct.App.1977), which held that an attorney who did not obtain judgment for a client was not entitled to a privilege for his fees. Appellees claim that State Farm paid under the policy in buying the mortgage on Lazlo's property and no attorney was needed to accomplish this. However, as above-noted, the mortgage debt was not cancelled by the purchase, but rather by the January 1985 tender and the judgment in the suit becoming final, a recovery which the attorney procured. Additionally, in *American Bank & Trust,* unlike the situation here, the attorneys claiming the privilege were not employed by the person who eventually received the proceeds of the policy.

vance costs and fund litigation. *See* Code of Professional Responsibility DR 5–103(b) (stating that client should be liable for expenses of suit); *see also Coon v. Landry*, 408 So.2d 262, 267 (La.1981) ("[c]ertainly the expenses of the suit will be deducted from the plaintiff's award when there has been collection on the judgment"—but finding no collection under the contingency contract at issue).

Since Lazlo and her lawyer agreed that the lawyer would recover all of her out-of-pocket expenses, plus forty percent of the amount of principal and interest collected on the judgment, we see no reason to deny the attorney her privilege because of arguable ambiguity in the memoralization of the contingent fee contract, when the client does not dispute the mutual understanding and there is no suggestion of overreaching or that an agreement of this sort is contrary to public policy. We hold that Lazlo's attorney is entitled to the attorney's first privilege for the full amount of her out-of-pocket expenses, both those included as taxable costs, which all the parties have treated as being $3,091.57, and those not included within taxable costs, which the parties have treated as being $2,186.89.

### Conclusion

We hold that State Farm is obligated to Lazlo under the judgment for interest on the entire $60,000, rather than on only the $38,500. The parties concede that the applicable rate is twelve percent and that the length of time is the forty-two months, or three and a half years, from July 1981 to January 1985, so that the amount of interest is hence $25,200. Accordingly, we reverse the district court's ruling in this respect, and hold that State Farm is obligated under the judgment for the total sum of $66,791.57 ($38,500, plus $25,200 interest, plus $3,091.57 costs) in addition to its rights under the mortgage and note being cancelled.

We further hold that Lazlo's attorney is entitled to a first privilege against the judgment proceeds in the amount of $39,358.46, composed of (a) $24,000 representing forty percent of the $60,000, (b) $10,080 representing forty percent of the $25,200 interest, (c) $3,091.57 representing one hundred percent of out-of-pocket expenses covered by the taxable costs, and (d) $2,186.89 representing one hundred percent of the remaining out-of-pocket expenses. We reverse the district court's contrary rulings.

The cause is remanded to the district court for entry of an order in conformity herewith.

REVERSED and REMANDED with directions.