Javaid HUSSAIN, individually and d/b/a Sheik's Oriental Rugs and Sheik's Oriental Rugs, Inc.

v.

BOSTON OLD COLONY INSURANCE COMPANY

No. 01–152.

United States District Court, E.D. Louisiana.

Sept. 13, 2001.

Steven Joseph Rando, Law Offices of Steven J. Rando, New Orleans, LA, Glen Alan Woods, New Orleans, LA, for plaintiffs.

David Edward Walle, John William Waters, Jr., Bienvenu, Foster, Ryan & O'Bannon, New Orleans, LA, for Boston Old Colony Ins. Co., defendant.

John M. Bilheimer, U.S. Department of Justice, Tax Division, Washington, DC, for U.S., defendant.

James Calvin Young, Heather M. Valliant, Chaffe, McCall, Phillips, Toler & Sarpy, LLP, New Orleans, LA, for Hibernia Nat. Bank, movant.

Shone T. Pierre, Louisiana Department of Revenue, Baton Rouge, LA, for Cynthia Bridges, movant.

## OPINION

PORTEOUS, District Judge.

Before the Court is a Motion to Determine Amount and Distribution of Funds filed on behalf of the defendant, Boston Old Colony Insurance Company, and a Motion to Tax Costs filed on behalf of the plaintiff, Javaid Hussain, individually and d/b/a Sheik's Oriental Rugs and Sheik's

Oriental Rugs, Inc. The parties, having waived oral argument, submitted these motions for the Court's consideration on June 29, 2001, following the submission of all supplemental memoranda. The Court, having considered the arguments of counsel, the Court record, the law and applicable jurisprudence, is fully advised in the premises and ready to rule.

### ORDER AND REASONS

### I. BACKGROUND:

On September 10, 1991, a fire damaged the inventory of Javaid Hussain d/b/a Sheik's Oriental Rugs and Sheik's Oriental Rugs, Inc. ("Hussain"). Hussain was insured by Boston Old Colony Insurance Company ("Boston Old"). Boston Old denied Hussain's claim on the grounds of arson. Hibernia National Bank ("Hibernia") filed suit in state court on September 9, 1992, as the loss payee. Hussain filed suit over a year later on September 29, 1993.

On March 15, 1999, judgment was rendered in favor of Javaid Hussain, individually and d/b/a Sheik's Oriental Rugs *and* in favor of Hibernia National Bank as loss payee, against Boston Old Colony Insurance Company in the amount of $500,000.00, the policy limits, "as their interests appear in the Policy". An amended judgment was entered awarding legal interest from the date of judicial demand until paid and all costs and expenses incurred.

The judgment was appealed and affirmed by the Fourth Circuit on November 13, 2000. The Louisiana Supreme Court denied writs. In preparing to pay the judgment, Boston Old discovered several tax liens filed by the United States of America and State of Louisiana. FNBC (now Bank One) also asserted a lien on the proceeds of the judgment. Additionally, a

dispute arose over how the interest was to be calculated, as well as, how much Hussain is entitled to for costs. Boston Old offered to deposit the sums owed in the Court's registry but Hibernia objected. Boston Old filed a motion in state court seeking a declaration on these questions. Plaintiff, Hussain, moved to tax costs. The United States then removed the matter to this Court before either motion could be heard.

### MOTION TO DETERMINE AMOUNT AND DISTRIBUTION OF FUNDS

### II. ARGUMENTS OF THE RESPECTIVE PARTIES:

Boston Old asks the Court to declare: (1) the amount owed under the judgment including the amounts of interest and costs; (2) who should be paid, in what amounts, and in what order; and, (3) upon payment of the funds, that the judgment be considered paid and satisfied and the bond posted cancelled. Boston Old questions the jurisdiction of this Court as the United States, who removed this action, was not a defendant or intervenor in the state court action. The United States had merely been ruled into court to show cause, if it had any, how Boston Old should pay the judgment against it in light of the government's tax lien. Next, Boston Colony contends that the Judgment splits the $500,000.00 between Hussain and Hibernia "as their interest appear" in the policy. Hibernia filed suit on September 9, 1992, while Hussain filed suit September 29, 1993. As such, Boston Colony contends that Hibernia is entitled to the amount it was owed on the day of the fire plus interest from the date it filed suit, September 9, 1992. While Hussain is owed the balance of the principal plus interest from the date of his judicial demand, September 29, 1993.

The United States of America ("United States") submits that it was issued a show-cause order by the state court requiring it to set forth its claims to the proceeds. 28 U.S.C. § 2410 authorizes a party to bring an action in interpleader or "in the nature of interpleader" against the United States, and to do so in state court, which is precisely what Boston Old did. As a condition of the waiver of sovereign immunity, the United States has a corresponding absolute right to remove an interpleader proceeding to a federal district court from the state court in which it was brought. Therefore, it does not matter that the United States was not formally named as a party.

Moreover, the United States argues when other creditors compete with the United States for property encumbered by a federal tax lien, such as the insurance proceeds here, federal law controls the priority of the competing claims to that property. In general, the rights of the competing parties are governed by the Federal Tax Lien Act, 26 U.S.C. 6323. As to Hussain's claims, any right Hussain may have in the proceeds are subordinate to the tax lien as the government's claim clearly outrank his. Additionally, it is asserted that any attorney's fees plaintiff is entitled to should be calculated on the portion of the judgment recoverable by Hussain only, in the amount of 33 1/3%, pursuant to the original contingency fee contract. Finally, the United States argues that its tax lien primes that of the State as the date of assessment for the federal taxes were 1992 and 1994, while the State's lien did not become effective until 1995.

The State of Louisiana asserts that a state tax lien was filed on April 6, 1995, for an outstanding liability in the amount of $17.834.70. R.S. 47:1577 provides for the tax lien and further provides that said lien affects third parties from the date of recordation. Louisiana, as a state taxing agency is not bound by the Federal Tax Lien Act.

The State further submits that Hibernia's claims are derived from a judgment it was specifically awarded which provided that "the proceeds shall be paid to Hussain and to Hibernia 'as their interests appear in the Policy and in accordance with the Amended Judgment entered herein in favor of Hibernia and against Javaid Hussain'." As such, the question is whether Hibernia possesses an independent claim or a claim through the plaintiffs in this matter. Bank One, however, obtained its lien in an unrelated judgment. Finally, the State contends Hussain's claim should fall to that of the State. The State's lien attaches to all of Hussain's movable and immovable property priming any right he may have in the proceeds.

Hibernia contends that its judgment against Boston Old is unaffected by any other claims or lien holders because Hibernia, as the only named loss payee under the policy, primes any other interest in the proceeds of the Judgment. First, it is asserted that Louisiana law provides that when a mortgagor (Hussain) takes out insurance for the benefit of the mortgagee (Hibernia), or when the insurance is made payable to the mortgagee as his interest may appear in the policy, the loss payee-mortgagee is entitled to the proceeds of the policy to the extent of his mortgage debt, with any surplus then payable to the insured-mortgagor. Accordingly, any liens held by creditors of Hussain or Sheik's Oriental Rugs are secondary to Hibernia's interest in the policy proceeds as loss-payee. Debts owed to other creditors, including the state and federal government, are limited to the balance of the judgment due to Hussain after payment of Hibernia's interest as loss payee. Only the

amount that remains after Hibernia's Judgment has been fully satisfied becomes divisible among Hussain and his other creditors. Moreover, Hibernia in no way has waived its interest in the policy proceeds as loss payee.

Next, Hibernia submits that Boston Old owes interest on the $500,000.00 policy limits from the date of judicial demand by Hibernia, September 9, 1992. The interest that is insured is the debtor's interest in the mortgaged property. Thus, courts have recognized that when an insured loss occurs, the insurer is liable for the value of the loss to the extent of the policy limits. Boston Old was liable from the date of the fire for the value of the loss sustained to the extent of the policy limits, $500,000.00. Hussain did not have to file a separate claim against Boston Old, and if he had not, he nonetheless would have been entitled, as the named insured, to the remainder of the policy proceeds after Hibernia's debt was satisfied. For purposes of calculating judicial interest from the date of judicial demand, September 9, 1992, the date Hibernia filed suit would be the appropriate date. Judicial interest from September 9, 1992 to January 31, 2001 amounts to $331,388.59. Accordingly, Boston Old owes Hibernia, as loss payee, the full balance due on the Note, including contractual interest, costs, and attorney's fees, as evidenced by Hibernia's Judgment against Hussain which totals $393,479.09. Finally, Hibernia submits that any attorney's fees due plaintiff's attorneys would be recoverable out of Hussain's portion of the judgment only and would not apply to Hibernia's recovery of the judgment

First, the plaintiff contends that the United States lacks standing to participate in these proceedings. Next, the plaintiff and attorneys Steven Rando and Glen Woods suggest that their attorney's fees, expert costs, court costs, and administra-

tive expenses in the sum of $368,449.72 must first be recovered out of the proceeds from this case. The remainder should then be awarded to the insured, Javaid Hussain, individually and d/b/a Sheik's Oriental Rugs in the amount of $495,880.34. Plaintiff submits that under Louisiana law, an attorney is granted a special privilege for the amount of their professional fees on all judgments obtained by them, and on all property recovered, either as plaintiff or defendant, and that special privilege takes a rank as the first privilege on any judgment obtained. R.S. 9:5001. Cases have held that this privilege extends to all court costs and litigation expenses that the attorney has advanced on the client's behalf. The plaintiff submits that the attorney's fees should be calculated on the entire judgment based upon the contingency fee agreement entered into at 39%.

With respect to the IRS's claim, plaintiff asserts that attorney's fees are placed in a special category known as 26 U.S.C. 6323(b)(8) Protection for Certain Interest Even Though Notice of Federal Tax Lien Has Been Filed. Under this provision, attorney's liens are subject to enforcement even though a federal tax lien has been filed and recorded against an individual, the attorney's client.

Next, plaintiff submits that the date of judicial demand is September 9, 1992. The judgment relates back to the date Hibernia filed its petition. The two cases were consolidated in state court and Boston old's plea of prescription on Hussain's claims was denied when the state court found that the petition related back to the petition filed by Hibernia. As such, the date of judicial demand is September 9, 1992.

With respect to the claims of Hibernia, the plaintiff contends that Hibernia obtained a default judgment against Javaid Hussain and Sheik's Oriental Rugs in the

amount of $167,012.11 with accrued interest. Plaintiff asserts that, because this judgment was obtained without the benefit of appraisal and for the purpose of taking federal income tax losses for uncollectible debts, the underlying debt is extinguished insofar as it exists as a personal obligation of the debtor and the entire fund representing the insurance proceeds becomes the property of the insured.

Plaintiff submits that FNBC is not a party to these proceedings and does not have any specific claim to the Boston Old proceeds directly. Moreover, FNBC has foreclosed on its promissory notes with Hussain seizing all right title and interest that the plaintiff has in these proceedings. Its actions have been without the benefit of inventory and selling the paper are consistent with the extinguishment of debt set forth above. Even if the debt was not extinguished, FNBC is merely an ordinary creditor of Hussain that has a recorded judgment against him. This status merely gives FNBC a priority and rank status superior to other ordinary creditors of Hussain. The IRS may be entitled to be paid with priority above FNBC as well as with any other creditor of Hussain.

### III. THE COURT'S ANALYSIS:

#### A. Subject Matter Jurisdiction:

■ The basis for jurisdiction asserted by the United States in removing the present action was pursuant to 28 U.S.C. § 1441(a) and (b), and 28 U.S.C. § 1442(a)(1). 28 U.S.C. § 1441(a) allows removal of any civil action of which the United States District Courts have original jurisdiction. Subsection (b) provides for removal of any civil action which the District Courts have original jurisdiction founded on a claim or right arising under the Constitution, treaties or laws of the United States or where there is diversity of citizenship. 28 U.S.C. § 1442(a)(1) al-

lows a civil action commenced in state court against the United States or any agency thereof on account of any Act of Congress for the collection of revenue to be removed to Federal court.

In the Government's memoranda, it is contended that jurisdiction is clearly present under 28 U.S.C. § 1444 and 28 U.S.C. § 2410(a)(5). 28 U.S.C. § 1444 states that:

[a]ny action brought under section 2410 of this title against the United States in any State court may be removed by the United States to the district court of the United States for the district and division in which the action is pending.

28 U.S.C. § 2410 provides in section (a):

Under the conditions prescribed in this section and section 1444 of this title for the protection of the United States, the United States may be named a party in any civil action or suit in any district court, or in any State court having jurisdiction of the subject matter—

(1) to quiet title to,

(2) to foreclose a mortgage or other lien upon,

(3) to partition,

(4) to condemn, or

(5) of interpleader or in the nature of interpleader with respect to, real or personal property on which the United States has or claims a mortgage or other lien.

The jurisdictional issue presented under the circumstances of this case appears to be one of first impression. In this case, the United States was not a party to the initial lawsuit filed in state court. Upon learning that there were outstanding tax liabilities and judgments, Boston Old filed a "Motion to Determine Amount and Distribution of Funds" in the original state court proceeding. The United States was served with a Rule to Show Cause Order

issued by the state court after the defendant filed said motion. It is undisputed that up to that point, the United States had had no involvement in the dispute at all. However, after being served with the show cause order, the United States removed the case to this Court.

After having reviewed the relevant jurisprudence, the Court notes that the majority of the cases cited by the parties involve suits wherein the United States is actually named as a defendant in the proceeding. See, *E.C. Robinson Lumber Co. v. Hughes*, 355 F.Supp. 1363 (E.D.Mo.1972); *Hamlin v. Hamlin*, 237 F.Supp. 299 (N.D.Miss. 1964); *Chrysler First Financial Services Corp. v. Greenfield*, 753 F.Supp. 939 (S.D.Fla.1991); *City of New York v. Evigo Corp.*, 121 F.Supp. 748 (S.D.N.Y.1954); *City of Miami Beach v. W.J. Smith, Jr.*, 551 F.2d 1370 (5th Cir.1977). While the United States was merely served with a rule to show cause, and not specifically "named a party" in the original civil action, it is the finding of this Court that the circumstances involved and the interest claimed by the Government bring this action within the meaning of § 2410 and thus jurisdiction is properly conferred pursuant to § 1444.

Clearly, the motion filed by Boston Old in state court is in the nature of an interpleader action. While it was not filed under a separate case number, but within the prior proceedings, it is a separate action whereupon the United States was served with a rule to show cause. There is no contention that the United States' lien for taxes is invalid. Moreover, the present action is intended to rank priority to the real or personal property to which the United States (and others) has a claim,

which brings it squarely within the scope and purpose of § 2410.

This Court believes that this ruling is consistent with the Fifth Circuit's decision in *Estate of Johnson v. United States*, 836 F.2d 940 (5th Cir.1988). In that case, an executor brought an action against the Government seeking a determination that the estate's administrative and funeral expenses took priority over the Government's tax lien and a distribution of the assets pursuant to that determination. The Fifth Circuit stated that:

> [w]hile it is true that the executor fails to present the typical section 2410(a) challenge to a federal tax lien by a third party purchaser or mortgagee holding an allegedly superior lien, we see no logical distinction between the instant case and that which the district court termed "the classic § 2410 situation." Both seek relief which would seem to fit within our earlier definition of a section 2410 quiet title action, to wit: "a determination that a tax lien does not exist, has been extinguished, *or is inferior in rank.*" Therefore, given that the executor is seeking to clarify or determine the relative rights of the parties in the property, presumably as a matter of the interaction of state and federal priority laws, his suit would seem the proper method for removing the clouds on title cast by the federal tax lien.

*Johnson*, 836 F.2d at 946 (internal citations omitted). The same can be said in the instant case.[1]

The case of *Reed & Steven v. HIP Health Plan of Florida, Inc.*, 81 F.Supp.2d 1335 (S.D.Fla.1999) lends further support to this Court's finding of jurisdiction. In *Reed*, an advertising agency sued a client

---

1. It should be noted that in *Johnson* the Government was named a party to the action and further that the parties did not dispute the fact that removal was proper. The Fifth Cir-

cuit, however, stated in footnote 6 that it agreed that the case was appropriately removed to the district court by virtue of section 1444.

in state court to recover payment for services rendered. A settlement was reached between the parties. Thereafter, defendant filed with the state court a "Motion to Determine Lien Priorities Against Settlement Proceeds" to resolve the competing claims. The state court issued a show cause order to the I.R.S., whereupon the I.R.S. removed the action to Federal Court. While no party involved in that case contested the jurisdiction of the Court, the District Court proceeded to render a Judgment ranking the fund distribution. *Id.*

Accordingly, it is the ruling of this Court that subject matter jurisdiction properly lies with this Court pursuant to 28 U.S.C. § 2410 and 28 U.S.C. § 1444.

### B. Order/Amount of Distribution:

■ When a mortgagor (Hussain) takes out insurance for the benefit of the mortgagee (Hibernia), or when the insurance is made payable to the mortgagee as his interest may appear in the policy, the loss payee-mortgagee (Hibernia) is entitled to the proceeds of the policy to the extent of the mortgage debt, with any surplus then payable to the insured-mortgagor (Hussain). See *Durbin v. Allstate Ins. Co.*, 267 So.2d 779, 781 (La.App. 2d Cir.1972). As such, Boston Old owes Hibernia, as loss-payee, the full balance due on the note ($167,012.11), including contractual interest ($159,617.71 as of 1/31/01 plus $44.07 per day thereafter until paid), costs and attorney's fees, as ordered by the state court Judgment against Hussain.

■ The jurisprudence provides that when an insured loss occurs, the insurer is liable for the full value of the loss to the extent of the policy limits and must direct payment to the loss-payee up to the balance of the mortgage debt. This calculation is premised on the fact that the interest that is insured is the debtor's interest in the mortgaged property. See, *Rushing v. Dairyland Ins. Co.*, 456 So.2d 599, 601 (La.1984); *Chrysler Credit Corp. v. Louisiana Ins. Guaranty Assoc.*, 514 So.2d 245, 247 (La.App. 5th Cir.1987).

■ Hussain has argued that Hibernia has forfeited any right it had in the proceeds by obtaining a default judgment against Hussain without the benefit of an appraisal. The Court, however, does not find this argument to have merit. The cases cited by Hussain in support of the argument all involve mortgagees-loss payees who attempted to collect insurance proceeds after foreclosing by executory process without appraisal. See, *Federal National Mortgage Association v. Prudential Property & Casualty Ins. Co.*, 517 So.2d 201 (La.App. 1st Cir.1987); *Rushing v. Dairyland Ins. Co.*, 456 So.2d 599, 601 (La.1984); and *Bankston v. Commercial Credit Corp.*, 86 So.2d 245 (La.App. 1st Cir.1956). In this case, Hibernia filed an ordinary process against Hussain to enforce its note and mortgage. The suit resulted in a judgment in favor of Hibernia via a Motion for Summary Judgment for the full amount of the mortgage debt, plus interest, costs, and attorney's fees. There has been no foreclosure sale, with or without an appraisal. As such, there has been no extinguishment of the debt owed.

Additionally, it is the finding of this Court that the Deficiency Judgment Act, La.R.S. 13:4106 et. seq., employed in many of the cases cited by the plaintiff, has no applicability to the present action. The Deficiency Judgment Act applies to cases where there has been a judicial sale of mortgaged property. In this case, the mortgaged property was destroyed in a fire and at issue is the insurance proceeds. Moreover, R.S. 13:4108.1 specifically exempts the collection of insurance proceeds from the Deficiency Judgment Act. As such, the collection of insurance proceeds

does not prohibit a mortgagee or other creditor from obtaining a deficiency judgment against the debtor.

In conclusion, Boston Old owes Hibernia, as loss-payee, the full balance due on the note ($167,012.11), including contractual interest ($159,617.71 as of 1/31/01 plus $44.07 per day thereafter until paid), costs and attorney's fees, as ordered by the state court Judgment against Hussain. Therefore, in theory, Hussain receives the remainder of the policy limits after Hibernia is compensated to the full extent of its loss. However, out of those surplus proceeds, the plaintiff's attorneys, the United States, and the State of Louisiana is entitled to recover before Hussain receives any of said funds.

Out of the surplus awarded to Hussain, first in line to be paid are the plaintiff's attorneys' fees. Pursuant to Louisiana law, an attorney is granted a special privilege for the amount of their professional fees on all judgments obtained by them, and on all property recovered, and that special privilege takes a rank as a first privilege on any judgment obtained. R.S. 9:5001. Moreover, 26 U.S.C. § 6323(b)(8) provides that such an attorney's lien is given priority over a properly filed Notice of Federal Tax Lien. As such, plaintiff's attorneys are entitled to recover their fees first before any other creditor of Hussain.

■ The plaintiff argues that the attorney's fees should be calculated on the entire amount recovered under the judgment, not only the portion recoverable by Hussain. The Court disagrees and finds that the attorney's fees are to be calculated on that portion of the judgment recoverable by Hussain after Hibernia has been paid in full. In support of its argument, plaintiff relies on *Lazlo v. State Farm Fire & Casualty Co.*, 796 F.2d 807 (5th Cir. 1986). In *Lazlo*, the plaintiff's home was destroyed by fire. The house was insured by State Farm. An outstanding mortgage existed on the property payable to Lomas and Nettleton, who were the loss-payees on the insurance policy. When State Farm paid the outstanding balance to Lomas and Nettleton, the mortgage was not released, but instead the note and mortgage were assigned to State Farm. The homeowner filed suit against State Farm and a jury found in favor of the plaintiff rendering judgment in the amount of $60,000.00 less the amount paid to Lomas and Nettleton. A dispute arose as to how the attorneys' fees were to be calculated. The Fifth Circuit held that the attorneys' fees were to be calculated on the full amount recovered, $60,000.00. In *Lazlo*, the Fifth Circuit noted that "it is crucial in this connection that State Farm did not 'pay off' the mortgage; it bought the mortgage." *Id.* at 811. The Fifth Circuit reasoned that the mortgage debt in *Lazlo* was property until it was cancelled by virtue of the tender by State Farm following the credit in the judgment, because the mortgage had been bought, not paid off, by State Farm. The cancellation of the mortgage recovered in the Judgment was thus "property recovered" by counsel; therefore, counsel was entitled to compensation for the total amount "recovered" for the client which was $60,000.00, $21,500.00 in cancellation of the mortgage debt and $38,500.00 additional. *Id.*

At first blush, this case favors the plaintiff herein, however, the cases are distinguishable. In *Lazlo*, the contingency fee contract provided for attorney's fees in the amount of 40% of the policy limits ($60,000.00) plus interest and costs. The contingency fee agreements entered herein provided for 33 1/3% of any recovery which is obtained in this matter and subsequently 39% "in and to any gross recovery I/we may have in this matter." As such, neither contract refers to the limits of the

policy for purpose of calculating the contingency fee. In this case, the amount recovered on behalf of the plaintiff was that portion of the judgment remaining after Hibernia is paid to the full extent of its loss. Moreover, counsel in this case did not secure the release of the mortgage debt as part of the judgment as was the case in *Lazlo*. Hibernia independently pursued its claim against Boston Old and obtained a judgment. As such, it is the finding of this Court that plaintiff's counsel are entitled to recover their fees only on that portion of the judgment actually remaining for Hussain after Hibernia has been paid in full, not on the entirety of the Judgment as to both parties.

In this case, the plaintiff executed a contingency fee contract with attorney, Steven J. Rando, on December 12, 1995, wherein plaintiff agreed to assign an undivided one third interest (33 1/3%) in any recovery which is obtained in this matter involving the fire and insurance proceeds related to an accident occurring on September 19, 1991. On December 8, 2000, the parties entered into a subsequent contingency fee contract wherein the plaintiff agreed to "assign, transfer, set over and deliver" an undivided thirty-nine percent (39%) interest in any gross recovery. The contract in force at the time suit was instituted, the trial was conducted, and all appeals taken was for a 33 1/3% contingency fee. It was only after the Louisiana Supreme Court denied writs and the judgment against Boston Old became final that an amended contingency fee contract was entered on December 8, 2000. All fees generated in creating the fund were conducted while the 33 1/3% contract was in effect. Any additional fees generated were incurred in collecting the monies. It is only those amounts which create the

fund which are entitled to the superpriority ranking. See, *Warner v. United States*, 1995 WL 693188 (E.D.Ark.1995); *United States v. First National Bank of Memphis*, 458 F.2d 560 (6th Cir.1972). As such, counsel is entitled to superpriority of attorney's fees rendered in creating the fund under the 33 1/3% contract calculated on the surplus remaining after Hibernia is compensated for its loss.[2]

 Next in order to be compensated out of the award to Hussain would be the United States and State of Louisiana, respectively, for the amount of their tax liens. 26 U.S.C. § 6321 provides a lien in favor of the United States upon all property and rights to property, whether real or personal, belonging to a person who has neglected or refused to pay a tax for which he is liable. A federal tax lien is effective upon assessment without any need for filing. See, *Rice Investment Co. v. United States*, 625 F.2d 565, 568 (5th Cir.1980). R.S. 47:1577 provides that any tax, penalty, or interest shall operate as a lien on all property of the tax debtor, both movable and immovable, enforceable in any court of competent jurisdiction. The statute further provides that the collector may cause notice of such lien, privilege, and mortgage to be recorded at any time after the tax becomes due in the mortgage records of any parish where the collector has reason to believe the tax debtor owns the property. The lien is effective as to third parties only from the date of recordation. In this case, the lien of the United States became effective on various dates between 1992 and 1994, as evidenced by the tax assessment dates introduced into evidence; whereas, the state tax lien was filed on April 6, 1995. Therefore, the Federal tax lien became effective prior to that of the state, as such, the Federal lien primes that

---

2. The Court notes that this superpriority includes any amounts advanced by the attorneys to or on behalf of the plaintiff, as provided pursuant to R.S. 9:5001(B).

of the State. Accordingly, following the superpriority of the attorney's fees, the Government is entitled to the amount of its lien followed by payment of the lien to the Louisiana Department of Revenue.

After paying off these priority liens, whatever remains of the proceeds is vested in Hussain, personally. It has been submitted that Bank One, as successor to First National Bank of Commerce, has a judgment lien against Hussain. Bank One, despite being made aware of these proceedings and having been served with a rule to show cause, failed to make an appearance and/or assert any claim to the proceeds involved herein. As such, upon allocation of the funds consistent with the opinion of the Court stated herein, Boston Old is relieved of any potential liability existent upon any claim Bank One may have had in the instant proceeds.

■ The only remaining issue is the calculation of interest on the Court's judgment. Hibernia filed its lawsuit September 9, 1992, while Hussain did not file suit until over a year later on September 29, 1993. As previously stated, the issue involves whether interest should be calculated on the entirety of the Judgment from the date of judicial demand by Hibernia, September 9, 1992, or whether interest should be computed on that portion of the Judgment awarded to Hibernia from its filing date, September 9, 1992, with interest on the remaining portion of the proceeds awarded to Hussain computed from the date of his judicial demand, September 23, 1993. The Court finds that the former is the appropriate means to calculate judicial interest.

This Court agrees with Boston Old that the principle enunciated in *Abraham v. Abraham,* 233 La. 808, 98 So.2d 197 (1957), the leading case on the issue of computation of interest on a judgment, as stated in *Mehta v. Baton Rouge Oil Co., Inc.,* 768 So.2d 243 (La.App. 1 Cir.2000), still applies today:

> The filing of the petition is certainly a judicial demand. However, it does not necessarily follow that the original judicial demand will be the only demand filed in the proceeding. There may be many incidental demands, and also other demands, which emanate from the original demand in the same action. Such demands are filed in a court of justice and must be classed as judicial demands, even though they are not the first demand or the original action.

*Mehta,* 768 So.2d at 245, citing *Abraham,* 98 So.2d at 198. In *Mehta,* the court found that the original petition filed by the plaintiffs for delinquent rentals for a specific period and specific amount were different from the amended claims for a different time period which contained an additional request for an acceleration of all rentals. As such, it was held that the damages relating to the cause set forth in the supplemental and amending petition would bear interest only from the date of that demand. *Id.*

Moreover, in *Livingston v. Southern Scrap Material Co., Inc.,* 486 So.2d 210 (La.App. 1 Cir.1986), the Court likewise addressed the issue of interest. It was stated:

> [a]lthough Article 1153 of the Louisiana Code of Civil Procedure provides generally that amendments relate back to the date of the filing of the original pleading, it should not be construed to compel the result that the original date of filing is the date of judicial demand for all purposes of computing interest.

*Livingston,* 486 So.2d at 213. The Court concluded that the amended petition asserted a new cause of action and therefore the date of its filing was the "date of judicial demand" for interest computation

purposes rather than the date the original petition was filed for which it related back to for prescription purposes. *Id.* This Court cited the *Livingston* case as authority to find that legal interest on the judgment was to be calculated from the date the malpractice action was converted from a declaratory judgment action to a complaint for monetary damages. *American Acceptance Corp. v. Elmer G. Gibbons, III, Inc.,* 704 F.Supp. 684 (E.D.La.1988).

In each of these cases, the pleading was amended to an extent that new causes of action were alleged. As such, it was only fair that the Court determine the "date of judicial demand" to be the date that the new claims were added. However in this case, Hibernia filed suit on September 9, 1992, seeking to recover the policy proceeds for the amount it was owed as loss-payee, based upon the mortgage it held on the property. Hussain filed suit on September 29, 1993, for what remained of the policy proceeds. Both parties derived their rights out of the same policy proceeds, Hibernia for the portion it was owed, with Hussain seeking recovery on what remained. The interest that was insured was the *debtor's* interest in the mortgaged property. As such, when an insured loss occurs, the insurer is liable *for the value of the loss to the extent of the policy limits,* payment however must first be directed to the designated loss payee up to the balance of the mortgage debt. See *Rushing v. Dairyland, Ins. Co.,* supra. As such, the fact that Hussain filed suit separately over a year later does not alter the date of judicial demand. Once Hibernia filed suit, the insurer was subject to judicial demand "for the value of the loss to the extent of the policy limits." Accordingly, it is the ruling of this Court that interest should be calculated on the full value of the policy, in this case, $500,000.00 from the date of judicial demand by Hibernia, September 9, 1992.

## MOTION TO TAX COSTS

### filed on behalf of the plaintiff

### IV. ARGUMENTS IN SUPPORT:

█ The defendant is unwilling to pay for the costs of John Theriot, CPA, an expert witness hired by the plaintiffs to review tax returns and expert reports of the opposing expert witness, Mr. McBay, associated with the affirmative defense of arson, which was based exclusively on a case of financial motive. Mr. Theriot's services were necessary to the ultimate recovery of the judgment in this matter and his work benefitted Hibernia as well. Theriot was deposed and was present during the trial to assist counsel with the cross-examination of defendant's expert. Moreover, Theriot would have been called to testify had it not been for the fact that the Court entered a directed verdict after hearing the testimony of defendant's witness. As such, plaintiff seeks an order compelling defendant to pay the amount of $24,509.50 in professional expert witness fees and accounting services. Additionally, plaintiff seeks reimbursement for all court costs incurred in connection with this matter including filing fees associated with this motion to tax costs.

### V. ARGUMENTS IN OPPOSITION:

Defendant opposes plaintiff's motion to tax as court costs a $24,509.50 bill of a CPA that plaintiff did not even call to the stand. There is no statute which allows for recovery of expert fees for an expert who was neither called as a witness nor whose deposition was used at trial. R.S. 13:3666 applies to witnesses called to testify in court. Mr. Theriot was retained by plaintiff to aid plaintiff and gave nothing for the trial court.

In the alternative, defendant submits that $24,509.50 is excessive. Factors to

consider include the amount of time consumed by the expert in compiling a report; amount charged for expert's services; amount of time spent in preparing for trial; amount of time actually spent in court; expertise of the expert; amount involved in award; and degree to which expert's opinion aided court in its decision. Mr. Theriot was merely retained to prepare counsel for cross examination of defendant's CPA, not to aid the court by his own testimony. Much of his time, according to his bill, was spent merely preparing Mr. Hussain to testify and, after directed verdict was rendered, assessing the tax consequences to Hussain and discussing the appeal with Hussain's counsel. It should also be noted there are many entries in the statement for time apparently spent by clerical personnel "organizing file", "typed letter", and "typed correction to letter". None of these services required professional expertise, and they should not be recoverable.

## VI. THE COURT'S ANALYSIS:

While Mr. Theriot was not called to testify at Court, the Court accepts the submission of counsel that Mr. Theriot was intended to be called to testify had the Court not ordered a directed verdict rendering his testimony unnecessary. As such, this Court believes that some reasonable fee is due. However, this Court finds $24,509.50 to be an obscene fee for an expert who did not even take the stand or issue a written report. Taking into consideration the factors set forth in *Viator v. Liverpool & London S.S. Protection and Indem. Ass'n.*, 701 So.2d 487 (La.App. 3 Cir.1997), *rehearing denied*, 712 So.2d 880, *certiorari denied*, 525 U.S. 821, 119 S.Ct. 63, 142 L.Ed.2d 49, namely, time reported-

ly spent in preparation for trial; the amount of time actually spent in court; the amount of the award involved; the degree to which the expert's opinion aided the Court in its decision, which in this case is not applicable; and, the expertise of the expert, it is the opinion of this Court that plaintiff is entitled to $5,000.00 for the expert fees of Mr. Theriot.

Accordingly,

**IT IS ORDERED** that the Motion to Determine Amount of Judgment and Distribution of Funds is as set forth in the opinion of the Court stated herein.

**IT IS FURTHER ORDERED** the Motion to Tax Costs is **GRANTED** to the extent that plaintiff is entitled to $5,000.00 associated with the expert accounting services of John W. Theriot.[3]

---

**3.** Once payment of the Judgment has been made, consistent with the Court's opinion herein, Boston Old Colony Insurance Company may petition the Court for the cancellation of the bond posted and a declaration that the Judgment has been paid in full and that all claims are rendered satisfied.